**Brandywine Homes v. Caln Township
Municipal Authority**

*Lawrence A. Goldberg,* for plaintiffs.

*William H. Lamb* and *John E. Stively,* for defendants.

MARRONE, J., December 6, 1971.—Plaintiffs in this case filed a complaint against the Caln Township Municipal Authority and the Township of Caln, Chester County, Pa., challenging the reasonableness of sanitary sewer rentals imposed on plaintiffs as of January 1, 1970. The complaint fails to aver which of the two defendants has fixed the allegedly unreasonable rates. However, no preliminary objections having been filed and the matter being at issue by reason of the filing of an answer on behalf of both defendants, the case was heard and is ready for disposition.

Averments of the complaint admitted by the answer

and testimony presented before the court disclose that defendant authority, properly "Caln Township, Chester County, Municipal Authority," was created by the Township of Caln pursuant to the provisions of the Act of May 2, 1945, P.L. 382, 53 PS 301. Prior to the creation of the authority, plaintiffs, James Williams and Marguerite Williams, who were husband and wife, occupied premises in the township. They, and others in the area where they resided, were supplied sewer service by the City of Coatesville, a municipality adjoining the Township of Caln. The City of Coatesville owned the sewer lines and other facilities in the township. (It is not necessary for purposes of this opinion to discuss plaintiffs Brandywine Homes, Carver Court Civic Association and Megargee Heights Civic Association, which the complaint also describes as "residents" of Caln Township.)

From the time of the inception of sewer service by the City of Coatesville, plaintiffs and other residents of the area were charged on the basis of water consumption measured by meters. At no time was an annual bill for such service more than $20 per year, most of the sewer billings per residence being between $12 and $20 a year.

From 1961 until 1967, the township embarked on an extensive study of sewer needs throughout the entire township. Following the incorporation of the municipal authority, as set forth in the complaint and admitted in the answer, the City of Coatesville conveyed the sewage system servicing plaintiffs to the authority. The authority then proceeded with plans to expand sewage service throughout the unserviced portion of the Township of Caln as well as for the construction of a sewage treatment plant to accept such sewage, if necessary.

To finance the construction, authority, on January

1, 1969, issued bonds in the sum of $2,280,000, $1,655,000 consisting of sewer revenue bonds and $625,000 consisting of sewer assessment bonds. At the same time the authority entered into a sewage system lease with the Township of Caln under the terms of which the authority proposed to finance the sewer extension project by the issuance of its bonds under an indenture of trust with Girard Trust Bank of Philadelphia, Pa. The lease recited ownership of the existing sanitary sewer facilities in the authority. Those facilities as well as other related facilities and all the rights-of-ways, easements and other interests in land shown and described in the plans and specifications and all other collection and other facilities connected thereto or thereafter acquired by the authority were leased to the township. Under the terms of the lease, the authority was to construct the system with all reasonable dispatch in return for which the township agreed to make payments of fixed rent out of its sewer revenues as that term was defined in the lease.

As is usual in a "lease-back" agreement, the township was to operate and maintain the sewer system. Township further agreed to require all owners of improved property within the township benefited, improved or accommodated by the sanitary sewer portions of the sewage system to connect therewith and to pay reasonable tapping or connection fees. In addition thereto, the township agreed to fix the connection fees, sewer rents and other sewer charges in an amount to be sufficient to pay all expenses of operating and maintaining the sewage system.

On February 1, 1967, the township adopted an ordinance establishing a quarterly rental for the use of the sanitary sewage collection facilities of $11 a quarter for each private dwelling or living unit. This

was followed by the passage of another ordinance on December 19, 1968, at which time the rates for each private dwelling or living unit were raised to $26.50 a quarter. These ordinances were adopted to meet the terms of the lease and were determined to be the amounts necessary for the proposed sewer service for the entire township pursuant to the studies made from 1961 through 1967.

The ordinance of December 19, 1968, establishing a $26.50 per quarter rate for each private dwelling unit originally was to become effective April 1, 1969. By an ordinance adopted April 30, 1969, the effective date was changed to January 1, 1970.

It was the action of the Board of Commissioners of Caln Township in setting the rates at $26.50 per quarter for each private dwelling unit which led to the filing of this complaint.

Initially, we find it necessary to comment that the complaint in this matter, so sketchily drawn, makes it difficult for this court to determine the real issues and particularly the question of jurisdiction. There is no averment as to which entity fixed the rates. However, counsel asked for and were granted permission to file briefs prior to the determination of this matter and we will consider the issues as raised in those briefs.

Both defendants argue that this court has no jurisdiction. On the other hand, plaintiffs argue that this court has and should take jurisdiction because the rates, while ostensibly set by the township, were in reality set by the authority and, therefore, our common pleas court has exclusive jurisdiction in this situation under section 4B(h) of the Municipality Authorities Act of May 2, 1945, P.L. 382, 53 PS §306. That section provides that the authority may ". . . fix, alter, charge and collect rates" and the ". . . court of com-

mon pleas shall have exclusive jurisdiction to determine all such questions . . ."

The testimony discloses that the authority was merely the financing device and that the township itself determined, fixed and charged the rates. All the facts in this case and all the exhibits clearly indicate a "sale and lease-back" financing technique described in East Hempfield Township v. Lancaster, 441 Pa. 406 (1971). While plaintiffs argue that the authority "extracted" the lease agreement from the township and in reality the authority has set the rates, there is nothing in the record to remove this case from the rule in the East Hempfield Township case. Under that, the complaint against the Caln Township Authority must be dismissed.

Defendant, Caln Township, which created the authority, has also been named as a defendant. It is the township which is operating the sewer system and which passed the ordinances fixing the rates of which plaintiffs complain.

Neither the First Class Township Code of June 24, 1931, P.L. 1206, art. XXIV, 53 PS §57401, nor the general municipal law regarding sewer rentals, Act of July 18, 1935, P.L. 1286, 53 PS §2232, as amended, vests exclusive jurisdiction in courts of common pleas to determine the reasonableness of rates fixed by a municipality. Our own research discloses that, in most instances, involving reasonableness of rates, mistakenly in cases involving municipal authorities, the attack has come by way of an action in equity presumably because the legislative or statutory remedy is inadequate. Perhaps this court should, for that reason, dismiss the complaint as to the township. However, to expedite a resolution of this prolonged litigation in view of the crisis all parties are facing, we deem it advisable to decide the question on its merits.

The gist of plaintiffs' complaint is that they were already being adequately served with sewer service at a cost greatly lower than what has now been inflicted on them by reason of a legislative determination to extend sewer service throughout the entire township. The argument is made that the existing users of the system should not be saddled with the cost of an expansion which they neither need nor desire. In that respect, it is similar to the situation in Butterworth et al. v. Upper Moreland-Hatboro Joint Sewer Authority, 73 Montg. L. R. 286 (1956). What was stated in that case is equally applicable here, even though that case involved rates set by a municipal authority. There, as here, plaintiffs' main contention was that the rates or rents were not reasonable and uniform because they were calculated from a figure which includes the amortization of bonds and interest thereon which were issued to provide a new sewage system made necessary by an expansion of the system. Here, plaintiffs argue that because the effluent from their sewers still is flowing into the Coatesville plant and that what the township is doing for the unsewered areas does not enure to their benefit, their rates should not have been increased. This begs the question of what must be done in the future either in the event Coatesville should refuse or be unable to take any further sewage from defendant township or whether it would be necessary to have another sewage disposal plant erected for them or allow them to connect with a sewage disposal plant which may be in the expansion program.

Sewer rentals have been adjudged valid even though the charges included interest on the sewer debt already incurred and to be incurred, and an annual amount sufficient to retire the bonds already outstanding and those to be issued in payment of a new

debt: Gericke v. Philadelphia, 353 Pa. 60 (1945). In Gericke the existing users of the sewer system paid no sewer rentals, the expense of the sewer service having been paid out of tax revenues, until an expansion was made necessary at which time all users were subjected to rentals. Therefore, the mere fact that plaintiffs in this case enjoyed a low rental for so many years and now are asked to pay a much larger rental would not per se make the rentals unreasonable or not apportioned equitably among the properties served by the sewerage system or sewerage treatment works.

Plaintiffs' testimony further showed that the increase on commercial and industrial users was not as great percentagewise as that on residences. There is no averment in the complaint nor is there any proof of discrimination as compared with other properties in plaintiffs' own classification. The classification of commercial users as against residential users is prima facie reasonable: Hickory Township v. Brockway, 201 Pa. Superior Ct. 260 (1963). We find nothing in the testimony to overcome that presumption. Much of the testimony was directed toward the consumption of water and the question of whether or not a more equitable basis for determining rates would be water consumption. Hickory Township, supra, discusses various methods of determining sewer rentals and states rather definitely that a sewer rental based upon water rates is not the only equitable method of fixing sewer rents. Flat rates based on a reasonable classification of users have been upheld.

Briefly summarizing, it is the opinion of this court that the challenge to the rate structure in the instant case is no more than a challenge to the wisdom and desirability of the project. There has been a legislative

determination as to the desirability of the sewer expansion in defendant township and the methods whereby that expansion should be accomplished. Certainly, some of the users of the system are paying now much higher rates than they did prior to the expansion plans. However, there is no evidence in this case that the sewer rentals established by ordinance are excessive. The question is not one of the value of the use, but the value of the service. Here, the decisions of the governing body were made after much study and with care. The revenues and expenditures have been carefully estimated. For this court to set aside the rentals as unreasonable for the reasons advanced by plaintiffs would be for this court to inquire into the wisdom of the action of township in embarking on the expansion of its sewer system. This a court will not do.

Township commissioners' exercise of discretionary power in matters of local public health cannot be disturbed unless the exercise of power was attended with fraud, official misconduct or arbitrary and capricious abuse of power or discretion: Hyam v. Upper Montgomery Joint Authority, 399 Pa. 446 (1960).

While this court sympathizes with the plight of plaintiffs who are faced with a large increase in the cost of a service which they have enjoyed for many years at a much lower cost, we find that to set aside these rentals as unreasonable would require an unwarranted intrusion by the judiciary into a field not in its domain. Particularly in this matter of sewer construction and sewer rentals, where the legislators may have had other alternatives, it is often difficult for individual property owners to appreciate the justice of the situation. However, in the absence of bad faith, fraud, capricious action or abuse of power, a court

will not inquire into the wisdom of legislative action such as that here subject to scrutiny: Parker v. Philadelphia, 391 Pa. 242 (1958).

Based on all the evidence, we find that the sewer rentals provided for in the township rate ordinance are equitably apportioned and that the revenues from the rentals are necessary to meet the obligations of township under the sewage system lease between it and the municipal authority.

## ORDER

And now, December 6, 1971, it is hereby ordered, directed and decreed that the prothonotary shall enter a verdict in favor of defendants and against plaintiffs.