Brandywine Homes and Carver Courts Civic Association and Megargee Heights Civic Association and James Williams and Marguerite Williams, his wife, Appellants, *v.* Caln Township Municipal Authority and Caln Township, Chester County, Pennsylvania, Appellees.

Argued October 7, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS and BLATT. Judge KRAMER did not participate.

*Lawrence A. Goldberg,* for appellants.

*William H. Lamb,* with him *Lamb, Windle & McErlane,* for appellee, Authority.

*Ronald M. Agulnick,* with him *Agulnick, Talierco & McShane Assoc.,* for appellee, Township.

OPINION BY JUDGE MENCER, May 23, 1975:

This is an appeal from a final order of the Court of Common Pleas of Chester County sustaining the validity of the sewer rental rate ordinances of Caln Township and the rates imposed thereunder. The facts and legal issues herein are similar to those in our decision in *Glen Riddle Park, Inc. v. Middletown Township,* 11 Pa. Commonwealth Ct. 574, 314 A.2d 524 (1974).

Appellants, and their fellow landowners who are represented by the named civic associations, are residents of the western most portion of Caln Township, which is a township of the first class. They brought an action in

equity which was decided in favor of appellees herein, and appellants' exceptions to the chancellor's adjudication were dismissed and a final order entered on November 29, 1973.[1]

The pertinent facts are ably stated in the adjudication:

"The pleadings and testimony presented before the court disclose that defendant authority, properly 'Caln Township, Chester County, Municipal Authority,' was created by the Township of Caln pursuant to the provisions of the [Municipality Authorities Act of 1945] Act of May 2, 1945, P.L. 382, 53 P.S. §301. Prior to the creation of the authority, plaintiffs, James Williams and Marguerite Williams, who were husband and wife, occupied premises in the township. They, and others in the area where they resided, were supplied sewer service by the City of Coatesville, a municipality adjoining the Township of Caln. The City of Coatesville owned the sewer lines and other facilities in the township.

"From the time of the inception of sewer service by the City of Coatesville, plaintiffs and other residents of the area were charged on the basis of water consumption measured by meters. At no time was an annual bill for such service more than $20 per year, most of the sewer billings per residence being between $12 and $20 a year.

"From 1961 until 1967, the township embarked on an extensive study of sewer needs throughout the entire township. Following the incorporation of the municipal authority, as set forth in the complaint and admitted in the answer, the City of Coatesville conveyed the sewage system servicing plaintiffs to the

---

1. The appellants first instituted an action at law. Before the court filed its opinion, which is reported at 20 Chester 100, 56 Pa. D. & C. 2d 437 (1971), the present action in equity was begun seeking identical relief.

authority. The authority then proceeded with plans to expand sewage service throughout the unserviced portion of the Township of Caln as well as for the construction of a sewage treatment plant to accept such sewage, if necessary.

"To finance the construction, authority, on January 1, 1969, issued bonds in the sum of $2,280,000, $1,655,000 consisting of sewer revenue bonds and $625,000 consisting of sewer assessment bonds. At the same time the authority entered into a sewage system lease with the Township of Caln under the terms of which the authority proposed to finance the sewer extension project by the issuance of its bonds under an indenture of trust with Girard Trust Bank of Philadelphia, Pa. The lease recited ownership of the existing sanitary sewer facilities in the authority. Those facilities as well as other related facilities and all the rights-of-ways, easements and other interest in land shown and described in the plans and specifications and all other collection and other facilities connected thereto or thereafter acquired by the authority were leased to the township. Under the terms of the lease, the authority was to construct the system with all reasonable dispatch in return for which the township agreed to make payments of fixed rent out of its sewer revenues as that term was defined in the lease.

"As is usual in a 'lease-back' agreement, the township was to operate and maintain the sewer system. Township further agreed to require all owners of improved property within the township benefited, improved or accommodated by the sanitary sewer portions of the sewage system to connect therewith and to pay reasonable tapping or connection fees. In addition thereto, the township agreed to fix the connection fees, sewer rents and other sewer charges in an amount to be sufficient to pay all expenses of operating and maintaining the sewage system.

"On February 1, 1967, the township adopted an ordinance establishing a quarterly rental for the use of the sanitary sewage collection facilities of $11 a quarter for each private dwelling or living unit. This was followed by the passage of another ordinance on December 19, 1968, at which time the rates for each private dwelling or living unit were raised to $26.50 a quarter. These ordinances were adopted to meet the terms of the lease and were determined to be the amounts necessary for the proposed sewer service for the entire township pursuant to the studies made from 1961 through 1967.

"The ordinance of December 19, 1968, establishing a $26.50 per quarter rate for each private dwelling unit originally was to become effective April 1, 1969. By an ordinance adopted April 30, 1969, the effective date was changed to January 1, 1970.

"It was the action of the Board of Commissioners of Caln Township in setting the rates at $26.50 per quarter for each private dwelling unit which led to the filing of this complaint."

Appellants first argue that the Township did not have the power to establish the sewer rates as set forth in the ordinances adopted February 1, 1967, and December 19, 1968. They contend that the rates are to be "fixed" and "determined" exclusively by the Authority in accordance with Section 4B(h) of the Municipality Authorities Act, 53 P.S. §306B(h), that the terms of the lease agreement between the Authority and the Township delegate too much power to the Township to set such rates, and that the Township has in fact unlawfully set the rates in this instance.

Section 4B(h) provides in pertinent part:

"(h) To fix, alter, charge and collect rates and other charges in the area served by its facilities at reasonable and uniform rates to be determined exclusively by it, for the purpose of providing for the payment of the expenses of the Authority, the con-

struction, improvement, repair, maintenance and operation of its facilities and properties . . . ."

Section 2401, 2401.1, and 2406 of The First Class Township Code, Act of June 24, 1931, P. L. 1206, *as amended,* 53 P.S. §§57401, 57401.1, 57406, provide that townships alone or "any municipality authority within a township" may "establish or construct" a sanitary sewerage system, 53 P.S. §57401, and the cost therefor "may be charged upon the properties benefited, improved or accommodated thereby to the extent of such benefits, or may be paid for wholly or partially by general taxation." 53 P.S. §57406. Under Section 2401, the township commissioners may require owners to make connections with the sewer and "[a]ll persons so connected may be required to pay, in addition to the cost of making such connections, a monthly or annual rate prescribed by ordinance." 53 P.S. §57401. However, by Section 2401.1, in the case of an authority establishing or constructing the sewer, provision is made for mandatory connection but no provision is made for monthly or annual rates. 53 P.S. §57401.1. This deficiency was soon remedied by passage of the Municipality Authorities Act already mentioned above, in 1945, and even before then by passage of the Sewer Rental Act, Act of July 18, 1935, P. L. 1286, *as amended,* 53 P.S. §§2231-34, which appellants have ignored altogether.

Section 1 of the Sewer Rental Act provided in 1968[2] in pertinent part:

"Whenever any county of the second class, city, borough, incorporated town, or township, either singly or jointly with other municipalities or township, . . . (c) has entered or shall hereafter enter into any contract with any authority established in accordance with law or with any private corporation for the design or construction of sewers . . ., such county

2. Sections 1 and 2 of the Sewer Rental Act were amended in 1970 so as to eliminate references to counties of the second class.

of the second class, city, borough, incorporated town, or township may provide by ordinance or resolution, enacted either before or after the acquisition or construction thereof, or the entry into such contract, for the imposition and collection of an annual rental, rate or charge for the use of such sewer . . . from the owners of, or the users of water in or on the property served or to be served by it . . . ." 53 P.S. §2231.

Section 2 of the Sewer Rental Act is also particularly relevant in pertinent part:

"Any such annual rental, rate or charge may be, but shall not be limited to, such sum as may be sufficient to meet any or all of the following classes of expense: . . . (b) such annual amount as may be necessary to provide for the amortization of any indebtedness incurred, or non-debt revenue bonds issued . . . *or as may be sufficient to pay the amount agreed to be paid annually under the terms of any contract or lease with any authority or private corporation furnishing, or undertaking to design or construct facilities with which to furnish sewer, sewerage or sewage treatment services to such . . . township and its inhabitants . . . ."* (Emphasis added.) 53 P.S. §2232.

All of these provisions read together indicate to us that the Township did not set the rates herein contrary to Section 4B(h) of the Municipality Authorities Act, and we find no unlawful delegation of rate-making power. The Authority as lessor had the exclusive power under the Municipality Authorities Act to fix and determine reasonable and uniform rates. The Township as lessee was empowered by the Sewer Rental Act to set appropriate rates to pay the amount agreed upon under the lease. The lease provided for an annual payment to the Authority so that it could meet its indebtedness under the bond issues, and the charge imposed upon appellants reflects the amount which the Township was obligated to pay the Authority. The ordinances enacted by the Township were

such as would insure the Township's financial obligations under the lease.

The agreement process contemplated by Section 2(b) of the Sewer Rental Act, 53 P.S. §2232(b), allowed ample opportunity for the Authority to determine the extent of the necessary obligation and the resulting financial consequences which would have to be met by the Authority and the Township. The Township was then required to set rates sufficient to meet the obligation decided upon by the Authority. There certainly was a meeting of the minds here, not the wholesale delegation of discretion which appellants aver. We can only conclude that the Township possessed the requisite statutory authority to impose a sewer rental under the facts of this case. *See Glen Riddle Park, Inc. v. Middletown Township, supra.*

Further, appellants assert that the sewer rates established by the township ordinance are not uniform, are unreasonable and discriminate against them. Our review of a rate resolution is limited to a determination of whether or not there has been a manifest and flagrant abuse of discretion or an arbitrary establishment of the rate system. *Patton-Ferguson Joint Authority v. Hawbaker,* 14 Pa. Commonwealth Ct. 402, 322 A. 2d 783 (1974). Our careful review of the record leads us to conclude that the Township did not flagrantly and manifestly abuse the discretion vested in it when it assigned the $26.50-per-quarter rate to appellants' use of the sewers. The burden of proving such an abuse of discretion is a heavy one, and the appellants have failed to carry that burden on this record. In essence, all that appellants established was an increase in the cost of service to those users who enjoyed such a service at a very low rental for several years.

We conclude by joining with the following observation made by the lower court:

> "It is the opinion of this court that the challenge to the rate structure in the instant case is no more than a challenge to the wisdom and desirability of the

project. There has been a legislative determination as to the desirability of the sewer expansion in defendant township and the methods whereby that expansion should be accomplished. Certainly, some of the users of the system are paying now much higher rates than they did prior to the expansion plans. However, there is no evidence in this case that the sewer rentals established by ordinance are excessive. The question is not one of the value of the use, but the value of the service. Here, the decisions of the governing body were made after much study and with care. The revenues and expenditures have been carefully estimated. For this court to set aside the rentals as unreasonable for the reasons advanced by plaintiffs would be for this court to inquire into the wisdom of the action of township in embarking on the expansion of its sewer system. This a court will not do.

"Township commissioners' exercise of discretionary power in matters of local public health cannot be disturbed unless the exercise of power was attended with fraud, official misconduct or arbitrary and capricious abuse of power or discretion. Hyam v. Upper Montgomery Joint Authority, 399 Pa. 446 (1960).

"While this court sympathizes with the plight of plaintiffs who are faced with a large increase in the cost of a service which they have enjoyed for many years at a much lower cost, we find that to set aside these rentals as unreasonable would require an unwarranted intrusion by the judiciary into a field not in its domain. Particularly in this matter of sewer construction and sewer rentals, where the legislators may have had other alternatives, it is often difficult for individual property owners to appreciate the justice of the situation. However, in the absence of bad faith, fraud, capricious action or abuse of power, a court will not inquire into the wisdom of legislative action such as that here subject to scrutiny."

Order affirmed.