White Rock Sewage Corporation, Appellant *v.* Township of Monroe, Appellee.

Argued April 7, 1983, before Judges BLATT, CRAIG and DOYLE, sitting as a panel of three.

*Melville G.M. Walwyn*, with him *William G. Dade, Dade & Walwyn*, for appellant.

*Richard C. Snelbaker, Snelbaker, McCaleb & Elicker*, for appellee.

OPINION BY JUDGE DOYLE, September 12, 1983:

Petitioner White Rock Sewage Corporation (White Rock) appeals an order of the Cumberland County Court of Common Pleas entering judgment against White Rock and in favor of Monroe Township. We affirm.

White Rock operates a sewage collection system as a public utility for the White Rock Acres subdivision located in Monroe Township. On April 27, 1978 White Rock entered into an agreement with Monroe Township under which the Township agreed to process White Rock's sewage at a municipal sewage treatment facility.[1] The agreement specified no fee scale, but

_____

[1] The facility is located in Monroe Township and was constructed by the Municipal Authority of South Middleton Township, a neighboring municipality. Monroe Township was permitted the use of the facility under a separate agreement with South Middleton Township.

White Rock agreed to be bound by the Township's rates, rules and regulations to be enacted at a future date. Negotiations were then held in which White Rock and the Township informally agreed upon a metered rate of $3.65 per 1,000 gallons of sewage. On June 22, 1978 Monroe Township enacted a sewage rate Ordinance which established a metered rate of $3.65 per 1,000 gallons to be applicable to a certain classification of customers. The Ordinance failed, however, to include White Rock's sewage collection system within any classification of customers.[2]

In August of 1978 White Rock connected its system to the municipal treatment facility and was billed at the metered rate of $3.65 per 1,000 gallons. White Rock made payments at this rate until September of 1979, when it refused to make further payments.

---

[2] The Monroe Township Ordinance created three classifications of customers which were defined as follows:

B. "Commercial Establishment" shall mean any structure or any portion thereof intended to be used wholly or in part for the purpose of carrying on a trade, business or profession or for social, amusement, religious, educational, charitable or public uses, and which contains plumbing for kitchen, toilet or washing facilities, excluding Private Dwelling or Living Units.

....

I. "Industrial Establishment" shall mean any structure intended to be used wholly or in part for the manufacturing, fabricating, processing, cleaning, laundering or assembly of any product, commodity or article.

....

N. "Private Dwelling or Living Unit" shall mean a structure or dwelling intended to be occupied as a whole by one family or an apartment or mobile home intended to be occupied by one family or any other one-family living unit.

The metered rate of $3.65 per 1,000 gallons of sewage applied to all Industrial Establishments and certain Commercial Establishments.

Monroe Township filed an assumpsit action in the Cumberland County Court of Common Pleas, and on March 4, 1982, that court entered judgment against White Rock, awarding Monroe Township the unpaid fees.[3] White Rock appeals the court's decision.

White Rock contends that the trial court erred in finding that it had agreed to pay the metered rate of $3.65 per 1,000 gallons. In reviewing the decision of a trial court we are limited to a consideration of whether findings of fact are supported by substantial evidence and whether the law was properly applied to the instant facts. *Department of Transportation, Bureau of Traffic Safety v. Volmer*, 41 Pa. Commonwealth Ct. 286, 398 A.2d 1098 (1979). After a thorough review of the record, we find that the court based its decision on uncontradicted testimony that White Rock had negotiated, and agreed upon the metered rate later embodied in the Ordinance. In addition, the court placed importance on the fact that White Rock paid this rate for nearly a year without raising any objection. We find this evidence sufficient to support the conclusion that White Rock agreed to the metered rate of $3.65 per 1,000 gallons of sewage.

White Rock contends that it cannot be bound to a rate set forth in the Township's Ordinance because that Ordinance did not apply to sewage collection systems. This contention misinterprets the court's decision, which based White Rock's obligation not on the Ordinance, but on the separate agreement it made

---

[3] Monroe Township was awarded $57,426.48 plus interest in a non-jury trial before Judge GEORGE E. HOFFER. White Rock's exceptions to the Opinion and order of the court were denied by the court en banc on June 25, 1982. Because both the original order of March 4, 1982 and the order denying exceptions entered judgment against White Rock, White Rock appeals from both orders.

with Monroe Township.[4] The failure of the Ordinance to reinforce this agreement in no way affects the legality of the agreement itself.[5]

White Rock also argues that Monroe Township exceeded its authority in establishing a rate which was excessive. In its brief White Rock contends that the revenues received by the Township greatly exceed the operating expenses charged by the authority. However, Section 2 of the Act of July 18, 1935, P.L. 1286, *as amended*, 53 P.S. §2232, allows a township to charge a rate for sewage services sufficient to cover not only operating expenses, but also expenses relating to maintenance, repair, depreciation, and amortization of indebtedness, allowing for a ten percent margin of safety. When the trial court considered all of these expenses, it correctly concluded that the rates established by the Township generated revenues which accurately reflected the Township's cost.

White Rock next contends that the fees were inequitably apportioned among sewage customers, citing the lower flat rate applicable to private dwellings. Judicial review of a municipality's plan of apportion-

---

[4] The trial court agreed that the ordinance did not apply to sewage collection systems, finding that such systems were not included within any classification of customers.

[5] Such separate agreements are specifically provided for in Section 3.03 of the Monroe Township Ordinance, which states, in pertinent part:

> [T]his Township shall have the right, based upon good reasons and circumstances existing to enter into special agreements with the Owner of any Improved Property, with respect to terms and conditions upon which Sanitary Sewage and/or industrial wastes may be discharged into the Sewer System and with respect to payments to be made to this Township in connection therewith. In such event, such service and payments with respect thereto shall be governed by terms and conditions of such special agreement.

ment is limited. As long as a charge is uniform within a classification, and is reasonably proportional to the service rendered, the court will not interfere with the municipality's discretion in the matter. *Glen Riddle Park, Inc. v. Middletown Township*, 11 Pa. Commonwealth Ct. 574, 314 A.2d 524 (1974). Initially we note that the question of uniformity is not applicable; White Rock constitutes its own class pursuant to the special agreement. The higher metered rate, which was also applicable to industrial users under the Ordinance, was reasonably proportional to the service rendered, especially considering the added costs which may be involved in servicing large users.[6] Monroe Township clearly acted within its discretion in apportioning costs among its customers.

Lastly White Rock argues that their agreement with the Township should be set aside as unconscionable, noting that the metered rate costs incurred under the agreement greatly exceeded the income from their own customers. The trial court, however, found that the excess costs were the result of an unexpectedly large sewage flow due to a defective condition in White Rock's system. Thus, White Rock is itself responsible for its present financial difficulties. The terms of their agreement were not unfair.

### ORDER

Now, September 12, 1983, the orders of the Court of Common Pleas of Cumberland County in the above referenced matter, dated March 4, 1982 and June 25, 1982, are hereby affirmed.

---

[6] The record reveals an instance of such added cost. White Rock's improperly constructed pipes which allowed ground water to seep into the system resulted in greatly excessive flows to the treatment facility. This type of situation causing such added costs to the Township would not be encountered in servicing individual residential customers at the lower flat rate.