516 A.2d 1313

Township of Kennedy, a municipal corporation, Appellant *v.* Ohio Valley General Hospital, Appellee.

Argued June 13, 1986, before Judges MACPHAIL and COLINS, and Senior Judge KALISH, sitting as a panel of three.

*Joseph J. Pass, Jr.*, with him, *Joel B. Gold, Jubelirer, Pass & Intrieri, P.C.*, for appellant.

*Arthur H. Stroyd, Jr.*, with him, *Michael J. Betts, Reed, Smith, Shaw & McClay*, for appellee.

OPINION BY JUDGE MACPHAIL, October 27, 1986:

The Township of Kennedy (Township) appeals from an order of the Court of Common Pleas of Allegheny County which denied its exceptions to a declaratory judgment entered by the Court against it on March 28, 1985. We reverse and remand.

The case was submitted to the Common Pleas Court on a set of stipulated facts. The pertinent facts are as follows:

6. Prior to 1949 the Ohio Valley General Hospital [(Hospital)] existed in the Township of Stowe.

7. In and around 1949 the Ohio Valley General Hospital began construction of a new

hospital, located in Kennedy Township, which at that time was a semi-rural community. At that time Kennedy Township had no sewage treatment facilities of its own and its sewage system was piecemeal, and most of the residences and businesses were serviced by on-lot septic systems.

. . . .

9. Ohio Valley chose to discharge into Alcosan [(Allegheny County Sanitary Authority)] by connecting to a sewer line which discharged into the sewer lines of McKees Rocks and ultimately into Alcosan.

10. To accomplish the end of placing the sewage into Alcosan and dealing with the sewer line, Ohio Valley General Hospital, Township of Kennedy, Borough of McKees Rocks, and the First National Bank of McKees Rocks agreed to do that which is set forth in the following documents:

A. McKees Rocks Borough Resolution 681, Plaintiff's Exhibit 2.

B. Resolution of Ohio Valley Hospital dated January 17, 1949, Plaintiff's Exhibit 3.

C. Escrow agreement dated June 13, 1949, Defendant's Exhibit A.

D. The bid contract between the Township of Kennedy and contractor Joseph Lollo, Defendant's Exhibit B.

E. All minutes and resolutions of the Township dealing with the Ohio Valley construction, Defendant's Exhibit C, a multiple series of documents. No additional minutes or resolutions were passed concerning the Ohio Valley line.

F. Correspondence dated November 23, 1948, Plaintiff's Exhibit 4.

. . . .

12. Installation of the Ohio Valley line was completed in approximately 1949-1950, at which time the Hospital began using the line.

13. Subsequent to the completion of the construction of the Ohio Valley line and no earlier than 1958, individual homes tapped into the sewer line at various locations between the Hospital property and the McKees Rocks Borough border, including a tap from Ohio Valley Provision, which was then Bayer's Dairy. Presently there are approximately 33 taps into the Ohio Valley line.

14. When the above sewer line was constructed there was no sewer authority existing in the Township of Kennedy, although one came in existence in 1957.

. . . .

17. In the 1960's and 1970's the Township sewered or had developers sewer, at developer's expense, other portions of the Township as needed and feasible. All such sewers became a part of the Comprehensive Collection System.

. . . .

21. [I]n 1971 the Kennedy Township Municipal Sewage Authority [(Authority)] which had been inactive since 1958, was reactivated.

. . .

22. The EPA Project was then undertaken [by the Authority] to sewer all areas of the Township where feasible which had not theretofore been sewered. The actual construction commenced in approximately August, 1975, and was completed in late 1977 and early 1978.

. . . .

33. In order to pay for the Comprehensive System and to operate and maintain the Town-

ship sewer collection system, the Township has enacted . . . [Ordinance No. 180 which increased the sewer rental fee.]

. . . .

42. Since its initial use of the . . . [Ohio Valley Line], the Hospital has paid to the Township . . . sewer rental charges as established by the Township ordinances until early 1978, at which time this dispute arose. A portion of the revenue collected by the Township has been and continues to be transmitted to Alcosan for the amount charged by Alcosan to the Township for the treatment of Hospital sewage as well as all other sewage transported to Alcosan.

43. [Township] . . . invoices for sewage do not break down charges between Alcosan and . . . [the Township.]

44. The first written protest regarding the Township's sewer rental charges by Ohio Valley Hospital was dated June 21, 1978.

45. Because of the increased costs in operation and maintenance of the Comprehensive Sewer System, Ordinance 180 was enacted to help defray those costs. [This ordinance drastically increased sewer rental charges in the Township.]

. . . .

53. Throughout the existence of the Ohio Valley line the Township has serviced the line in the same manner.

. . . .

55A. The Hospital did not pay their bill, and as a result, the Township entered a lien at GD79-25837 and GD79-13972, and issued a writ of *scire facias sur,* municipal claim. The Hospital responded to the writ.

56. In October, 1981 the action was changed to that of declaratory judgment and a stipulation to that effect was filed with the Court. That stipulation is marked as Plaintiff's Exhibit 12.

. . . .

60. Maintenance and repairs by . . . [the Township] are performed on an as needed basis.

R.R. at 52a-66a.

Because this was a declaratory judgment action which follows as nearly as possible the practice and procedure in an action in equity, we will review the determination of the trial court as we would a decree in equity. *See Supp v. Erie Insurance Exchange*, 330 Pa. Superior Ct. 542, 479 A.2d 1037 (1984); Pa. R.C.P. No. 1601(a). Our scope of review in equity matters is limited to determining whether the Chancellor's findings are supported by substantial evidence, whether an error of law was committed, or whether the Chancellor abused his discretion. *Babin v. City of Lancaster*, 89 Pa. Commonwealth Ct. 527, 493 A.2d 141 (1985).

The Hospital argues, as it did before the Chancellor, that Section 1 of the Act of July 18, 1935, P.L. 1286 (Sewer Rental Act), *as amended*, 53 P.S. §2231, does not authorize the Township to charge the Hospital a sewer rental fee. The pertinent provisions of Section 1 of the Sewer Rental Act state:

Whenever any county, city, borough, incorporated town, or township, either singly or jointly with other municipalities or townships, (a) has, wholly or partially, constructed or completed or shall hereafter, wholly or partially, construct or complete any sewer, sewerage system or sewage treatment works, either wholly or partially at public expense, or . . . (c) has entered or shall hereafter enter into any contract with

any authority established in accordance with law or with any private corporation for the design or construction of sewers, sewerage systems or sewage treatment works or for the furnishing of sewer, sewerage or sewage treatment services, for its or their benefit and the benefit of the inhabitants thereof, such county, city, borough, incorporated town, or township may provide by ordinance or resolution, enacted either before or after the acquisition or construction thereof, or the entry into such contract, for the imposition and collection of an annual rental, rate or charge for the use of such sewer, sewerage system, or sewage treatment works from the owners of, or the users of water in or on the property served or to be served by it, or from both the owner and the water user, whether such property is located within or without the corporate limits of such county, city, borough, town or township.

The annual rental, rate or charge so imposed shall be a lien on the properties served, and such liens may be filed in the office of the prothonotary and collected in the manner provided by law for the filing and collection of municipal claims.

As indicated in paragraph ten of the stipulations, there are a series of documents in the record which lay out agreements between various parties concerning the sewer line. The only document which carries signatures of officials from both the Hospital and the Township is an agreement setting up an escrow account into which the Hospital would place funds and out of which the Township would then pay the contractor as payments became warranted. A portion of that agreement states:

WHEREAS, under a certain contract dated May 2, 1949, between the Municipality and

JOSEPH LOLLO, a Contractor, the Contractor agreed to construct for the Municipality for a total consideration of $14,323.50 a certain ten (10) inch and eight (8) inch TC pipe sanitary sewer from the existing sewer on Hickory Street near the McKees Rocks Borough and the Kennedy Township line to the new Ohio Valley General Hospital; said price of $14,323.50 being divided as follows: for the Township sewer, $8,254.00 and for the portion of sewer on the Hospital property, $6,069.50.

R.R. at 77a.

It is clear from the escrow agreement and the bid contract between the Township and the contractor, that it was the Township which actually entered into a contract for the construction of the sewer line. The Hospital agreed to provide the funding, however.[1]

This factual situation provides this Court with an issue of first impression: whether under Section 1 of the Sewer Rental Act, 53 P.S. §2231, a municipality must

---

[1] In his original opinion on the Hospital's declaratory judgment petition, the Chancellor stated that "the [sewer] system which Hospital uses was not the product of a contract entered into between Township and . . . anyone else." R.R. at 206a. In his opinion dealing with the Township's exceptions the Chancellor stated: "Township grounds its contention on agreements entered into between the hospital, the contractor and itself. These agreements deal with the payment of the construction costs from hospital's funds, the performance by contractor of satisfactory work and completion in accordance with the design, etc." R.R. at 227a.

To the extent that the Chancellor's language from his first opinion could be construed as meaning that the pertinent contract language did not exist, such finding is simply not supported by substantial evidence. To the extent that the Chancellor's statements can be interpreted as meaning the agreements do not bring the situation within the ambit of Section 1 of the Sewer Rental Act, we hold that the Chancellor committed an error of law.

provide the funds for construction of a sewer line in order to charge sewer rental for use of the line.

The language of the Sewer Rental Act says nothing about funding. Subdivision (c) merely requires that a municipality "enter into any contract . . . for the . . . construction of sewers." The Township unquestionably did that. The Sewer Rental Act also requires that the project be for the benefit of the Township "and the benefit of the inhabitants thereof." There is no question that the sewer line in question provided a benefit for the Township and its inhabitants. The line provided a hospital, located in the Township, with a safe means of disposing of its sewage. It also provided a sewer line which could be used by other inhabitants of the Township in future years.

We agree with the Chancellor that there is nothing in the record which would lead to the conclusion that the sewer line was built "wholly or partially" at the public expense and that, hence, the language in subdivision (a) of Section 1 of the Sewer Rental Act would be inapplicable. We do, however, disagree with the Chancellor concerning the applicability of subdivision (c). It is apparent that the situation does fall under that language.

The Hospital argues that the Township does not own the line and hence cannot charge rental for its use. While ownership of a sewer facility is not mentioned in Section 1 of the Sewer Rental Act, it would follow logically that in order to charge a rental fee for use of a sewer line, a municipality must be deemed the owner of the line.

The Township makes no claim that it owns the line pursuant to its power of eminent domain. It argues, correctly we think, that its ownership of the line, at least that portion which is not on Hospital property, derives from the clear language of the various agreements involved.

The portion of the escrow agreement quoted above allocates part of the cost of the project to the "Township sewer" and part to the "sewer on the Hospital property." Paragraph 7 of the contract between the Township and the contractor requires that the contractor "deliver to the Township sound and satisfactory work." (Paragraph 7, R.R. at 81a.) Also included in the construction contract were provisions that the liquidated damages were to be paid to the Township (Paragraph 1, R.R. at 80a), proof of insurance was to be made to the Township (Paragraph 3, R.R. at 80a), the Township had the power to alter performance under the contract (Paragraph 4, R. R. at 80a), and surety bonds on the project were to indemnify the Township (R.R. at 83a).

The clear language of the agreements indicate the intent of the parties that the portion of the sewer line not on Hospital property was to belong to the Township. Assuming, for the moment, that these agreements are ambiguous, the actions by the parties subsequent to the agreements indicate their meaning. *See Atlantic Richfield Co. v. Razumic,* 480 Pa. 366, 390 A.2d 736 (1978); *Commonwealth ex rel. Fleming v. Fleming,* 288 Pa. Superior Ct. 504, 432 A.2d 626 (1981). It is clear from the record that the Hospital did indeed pay rental fees, *albeit* much lower ones than that which the Township now wishes to extract, for approximately 28 years before it stopped paying them. This action by the Hospital certainly indicates an intent on its part that ownership of the line, at least that portion off its property, was not retained by it.

It may seem unfair to impose a sewer rental fee on the Hospital when it was the Hospital which provided the funding for the line. It appears, however, that it was the Township which had the responsibility of ensuring that the line was built properly and it is the Township which has maintained the line and which would,

presumably, be responsible for repairing the line if it were to break. It is also true, however, that the Hospital makes no use of any of the Township's other sewer facilities except for the line which it funded. The "EPA project" which provided sewer service to the entire Township does not directly benefit the Hospital. Most of the increase in the sewer rental fees charged to the Hospital is the result of the Township's efforts in retiring the debt for the "EPA project."

Much of what the parties are arguing in this case actually refers to the question of whether the sewer rental fees charged by the Township are reasonable, not whether they may be charged at all. The Chancellor never reached this issue. We reverse the Chancellor's determination that the Township does not have the power to impose a sewer rental fee on Hospital for use of the line in question. We find it necessary, however, to remand to the Chancellor for a determination of whether those charges are reasonable.[2]

---

[2] Township alleges that this action by the Hospital is barred by the doctrines of accord and satisfaction in that the Hospital already agreed by stipulation dated October 9, 1981, to pay the sewer charges that it has been refusing to pay. The agreement, while stating that the Hospital will pay $95,782.67 to pay off the amounts it had previously refused to pay, says the following about future payments: "Defendant will continue to pay the full sewage charges and assessments representing the charges by both plaintiff as well as the other components including the ALCOSAN charges thereof *until a determination by a court to the contrary.*" R.R. at 23a (emphasis added).

It is evident that the agreement leaves clear the way for a declaratory judgment action by the Hospital seeking a judgment that the rental fees are illegal or unreasonable.

The Township also asserts that the Hospital's actions are barred by laches. We hold that the Township has waived this argument. In the October 9, 1981 stipulation, the parties agreed jointly that their dispute over the sewer rental fees, which had originally been brought before the Court on a writ of *scire facias* by the

ORDER

The order of the Common Pleas Court of Allegheny County denying Appellant's exceptions is reversed and the case is remanded for a determination of whether sewer rental charges levied by the Appellant are reasonable.

Jurisdiction relinquished.

---

Township, would be submitted as a declaratory judgment action. R.R. at 23a-24a. The Township will not now be heard to complain that the complaint is barred by laches. *See Mauch v. Pittsburgh Pension Board,* 383 Pa. 448, 119 A.2d 193 (1956).

Further, as noted earlier in the opinion, this action was in the form of a declaratory judgment. As such, the practice and procedure follow that of an action in equity. That is why we refer to the trial court as "Chancellor." Upon remand, we note, the determination of the reasonableness of the rates is to be made not by a Chancellor, but by a common law court of common pleas. *See Wivagg v. Downtown McKeesport Business District Authority,* 94 Pa. Commonwealth Ct. 598, 503 A.2d 1112 (1986); *Tornetta v. Plymouth Township Municipal Authority,* 31 Pa. Commonwealth Ct. 353, 375 A.2d 1381 (1977).