566 A.2d 348

**TOWNSHIP OF KENNEDY, a municipal corporation, Appellant,**

v.

**OHIO VALLEY GENERAL HOSPITAL, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Oct. 3, 1989.

Decided Nov. 14, 1989.

Reargument Denied Jan. 24, 1990.

Joseph J. Pass, Jubelirer, Pass & Intrieri, P.C., Pittsburgh, for appellant.

Michael J. Betts, with him, Arthur H. Stroyd, Jr., Reed, Smith, Shaw & McClay, Pittsburgh, for appellee.

Before DOYLE, PALLADINO and SMITH, JJ.

DOYLE, Judge.

Before us for consideration is an order of the Court of Common Pleas of Allegheny County which, pursuant to a remand ordered by this Court in *Township of Kennedy v. Ohio Valley General Hospital,* 101 Pa. Commonwealth Ct. 536, 516 A.2d 1313 (1986) (*Kennedy I*), determined that sewage rates which the Township of Kennedy (Township) sought to impose upon Ohio Valley General Hospital (Hospital) were unreasonable.

The history of the Hospital's and the Township's sewer facilities is fully set forth in *Kennedy I* and we shall reiterate it here only in capsulized form. When the Hospital began its construction in the Township in 1949 the Township had no sewage treatment facilities of its own. Thus, the Hospital discharged its sewage into the sewage system of the Allegheny County Sanitary Authority (ALCOSAN), via the "Ohio Valley line", which line, as we held in *Kennedy I,* is owned by the Township although the funds for the construction of the line were provided by the Hospital. The Ohio Valley line discharges into the sewer lines of the Borough of McKees Rocks at its municipal border and ultimately flows into the ALCOSAN system. Sewer rental charges were paid by the Hospital to the Township for use of this sewage system until the current litigation began.

At the time the Ohio Valley line was constructed no sewer authority existed in the Township. One did come into existence in 1957 (the Authority) but was thereafter inactive until 1971 when it was reactivated. It then constructed new sewer lines and sewer services in the Township. This project, known as the "EPA project," was implemented

because the Township had been cited by the Pennsylvania Department of Environmental Resources and the United States Environmental Protection Agency for permitting raw sewage to discharge and percolate through portions of the Township due to defective septic systems maintained by various home owners and commercial establishments. Construction on the EPA project actually began in 1975 and was completed in late 1977 or early 1978 and became part of the "Comprehensive Sewage Collection System" of the Township.[1] The Hospital, however, utilized only the Ohio Valley line and did not directly benefit from the additions to the system attributable to the EPA project. To pay for the comprehensive sewer project the Township passed an ordinance [2] which increased sewer fees including those paid by the Hospital. Thereafter, the Hospital refused to pay its bills and litigation ensued which litigation was ultimately, by stipulation, treated as a declaratory judgment action.

In *Kennedy I* the Hospital argued successfully to the trial court that Section 1 of the Act of July 18, 1935, P.L. 1286 (Sewer Rental Act), *as amended*, 53 P.S. § 2231, did not authorize the Township to charge the Hospital a sewer rental fee. That Section states:

Rentals for use of sewage system

Whenever any county, city, borough, incorporated town, or township, either singly or jointly with other municipalities or townships, (a) has, wholly or partially, constructed or completed or shall hereafter, wholly or partially, construct or complete any sewer, sewerage sys-

---

**1.** The Township's "Comprehensive Sewage Collection System," which has been administered and operated by it, has been defined in Stipulation 1 of the parties' stipulation of facts as:

[A]ll collector lines, forced mains, and pump stations which ultimately discharge sewage for treatment in the Allegheny County Sanitary Authority (ALCOSAN). This includes all lines and pump stations constructed before 1975 EPA Project, as well as those lines and pump stations constructed as a result of the 1975 EPA project.

**2.** The Township entered into a leaseback agreement with the Authority which, *inter alia,* authorized the Township to enact ordinances to provide for the payment of reasonable sewer rates for services rendered by the Authority.

tem or sewage treatment works, either wholly or partially at public expense, or (b) has acquired or shall hereafter acquire the same, either wholly or partially at public expense, or (c) has entered or shall hereafter enter into any contract with any authority established in accordance with law or with any private corporation for the design or construction of sewers, sewerage systems or sewage treatment works or for the furnishing of sewer, sewerage or sewage treatment services, for its or their benefit and the benefit of the inhabitants thereof, such county, city, borough, incorporated town, or township may provide by ordinance or resolution, enacted either before or after the acquisition or construction thereof, or the entry into such contract, for the imposition and collection of an annual rental, rate or charge for the use of such sewer, sewerage system, or sewage treatment works from the owners of, or the users of water in or on the property served or to be served by it, or from both the owner and the water user, whether such property is located within or without the corporate limits of such county, city, borough, town, or township.

On appeal we rejected the trial court's conclusion that Section 1 did not give the Township the requisite authority to impose the fees at issue and we specifically held that such authority could be found in subsection (c) of Section 1. We then remanded the case to the trial court for it to determine whether the charges were reasonable.

Upon remand the trial court inexplicably held once again that under Section 1 of the Sewer Rental Act (including subsection (c)) the Township had no authority to charge the Hospital sewer rental charges [3] except for the maintenance and repair of the Ohio Valley line and the sewer rental fees ALCOSAN charges to the Township. The trial court also found that there were three separate and distinct types of

---

3. Contrary to this Court's holding in *Kennedy I* the trial court wrote "[T]he system which Hospital uses was not the product of a contract entered into between Township and Authority or, for that matter, anyone else." (Trial court op. p. 6) Our contrary conclusion was based upon exhibits stipulated to by the parties.

sewer systems within the Township and opined that "[t]he Hospital's sewer line is in no manner interconnected with or is it served by the Authority's sewer system." (Trial court op. p. 2.)[4] The court thus concluded that the Township's method of considering the three systems as merged and dividing the total cost equally among all entities served by the three systems was unreasonable as to the Hospital. It is from this determination that the Township appeals.

On appeal we are asked to decide whether the trial court erred in determining that the Township could not charge the Hospital the same sewer rates, based upon water consumption, as were charged other customers of the "comprehensive system" and whether the lower court erred in concluding that the fees charged the Hospital were unreasonable.

We begin our analysis by recognizing that our review of a rate resolution is circumscribed; we can determine only whether there has been a manifest and flagrant abuse of discretion by the municipal authority or an arbitrary establishment of the rate system. *Brandywine Homes v. Caln Township Municipal Authority*, 19 Pa. Commonwealth Ct. 193, 339 A.2d 145 (1975). The burden of proof is upon those challenging the rate. *Id.* The charge must be reasonably proportional to the value of the service rendered. *Hamilton's Appeal*, 340 Pa. 17, 16 A.2d 32 (1940). Phrased differently, in order to be assessed sewer rental fees an individual sought to be charged must obtain "some" benefit.

Thus, in *Hamilton's Appeal* it was held that charges were unlawful as to properties not connected to the system or those connected to it but not utilizing it (such as vacant

---

4. The trial court held that the three separate systems were (1) the Hospital's sewer system, (2) the sewer systems constructed by private developers and the Township system, and (3) the Authority's system. Upon our thorough review of the record, we disagree with this characterization. It is explicitly clear that the *Township's* comprehensive system would encompass all the subsystems within the Township including the "Authority's Sewer System", *i.e.*, the EPA project which the Authority constructed. *See supra* n. 1.

buildings) since, in such circumstances, *no* benefit was received. In contrast, in *Brandywine*, where sewer improvements resulted in old users' rates being significantly increased so that the rates were on a par with those charged to new users, we held that the plaintiffs had not demonstrated unreasonable rates per se. *Accord Turley v. North Huntingdon Township Municipal Authority*, 5 Pa. Commonwealth Ct. 116, 289 A.2d 509 (1972) (authority permitted to increase rates to old users to pay for portion of new sewer). Both *Brandywine* and *Turley* emphasized the importance of court deference to an authority rate determination provided the authority has not acted capriciously, with fraud, or in bad faith. We note that the trial court in the instant case made no such finding. Further, *Brandywine*, quoting the reasoning of the lower court, explained that in assessing the possible excessiveness of rates "[t]he question is not one of the value of the use, but the value of the service." *Id.* 19 Pa. Commonwealth Ct. at 201, 339 A.2d at 149.

Perhaps most illustrative for our purposes is *Duryea Borough Authority v. McLaughlin*, 74 Pa. Commonwealth Ct. 517, 460 A.2d 402 (1983). In *Duryea* the authority assessed charges against current users whose sewer lines were already in place. It was stipulated that the new lines were not constructed for the current owners' use, nor did they benefit in any way from the new lines. But, of more critical significance, the resolution adopted by the Duryea Borough Authority, by its very terms, *limited rents to those utilizing the new facilities*. On these facts it was held that attempts to charge the old users were illegal. By contrast, in the case now before us, while there appears to be no dispute that the *additions* to the comprehensive system stemming from the EPA project were not needed or used by the Hospital, the ordinance authorizing the fees was not as restrictive as in *Duryea*. It provides:

There is hereby imposed a sewer rental or sewer service charge in Kennedy Township upon the owners and/or occupants of all properties within Kennedy Township

served by the sanitary sewers of Kennedy Township or private sewer systems which discharge ultimately into the sewerage system of the Allegheny County Sanitary Authority, for the purpose of providing for the cost of operation, maintenance, expenses of administration, applicable debt service costs, charges by the Allegheny County Sanitary Authority, and other related costs.[5]

Furthermore, *Duryea* did indicate that where a municipal authority has the responsibility to repair, maintain and operate sewer facilities it may charge users reasonable rates. The Hospital does not contend that the Township was not responsible for the repair, maintenance and operation of the Ohio Valley line; indeed, the evidence is to the contrary. In short, the Ohio Valley line is part of the Township's comprehensive sewer system and, because the Hospital uses that line, the Hospital *does* receive some benefit from the Township's sewer system and must, therefore, pay reasonable sewage charges.

■ Turning now to the specific facts before us, we note that the trial court concluded that the EPA project additions to the sewer system for which the rate increase was implemented did not benefit the Hospital because these new additions were not interconnected to the system being used by the Hospital. This is clear error. The lower court's finding that there existed three completely unconnected systems is without foundational support in the record. *See supra* nn.1 & 4. What the record does establish is (a) the sewer system was "comprehensive" and (b) the EPA project additions caused the sewage to be emptied, ultimately, into ALCOSAN, where the Ohio Valley line also empties its' contents. While it may be true that the Hospital received no direct benefit from the EPA project additions to the system, it is benefitted by the system generally and, thus, under *Turley* and *Brandywine* is subject to reasonable rates. Indeed, we believe that is what *Brandywine* means

5. While there were later amendments to this ordinance, it appears that none amended this Section.

when it indicates that the proper focus is on value of *service,* not value of use.

The question of whether the *amount* of the rate increase is unreasonable is the next logical inquiry. The record demonstrates that rates were based strictly upon consumption. The Hospital presented no evidence to show that under this formula its rates were improperly calculated. Keeping in mind that deference must be paid to the municipal authority's rate structure and that we cannot declare a rate unreasonable unless it is arbitrary or manifests a flagrant abuse of discretion, *Brandywine,* we hold that the rate structure employed here must be upheld because it is "equitably apportioned" as that term is used in Section 2 of the Sewer Rental Act, 53 P.S. § 2232. *Accord White Rock Sewage Corp. v. Township of Monroe,* 77 Pa. Commonwealth Ct. 119, 465 A.2d 102 (1983) (metered rate which was applied only to industrial and certain commercial users upheld).

Based upon the foregoing opinion, the order of the trial court is reversed.

## ORDER

NOW, November 14, 1989, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby reversed.