**Marett v. Borough of Volant**

C.P. of Lawrence County, no. 70070 of 2000 M.D.

*Phillip L. Clark Jr.,* for appellants.
*Thomas W. Leslie,* for appellee.

PRATT, *P.J.,* March 30, 2001—This is an appeal under the Local Agency Law (2 Pa.C.S. §752) by appellants John Marett and Craig Marett from a decision by the appellee, Borough of Volant to initiate water shut-off procedures for failure to pay delinquent tap-in fees and user fees with regard to the sewer system within the borough, as set forth in borough ordinance no. 4-1994, as amended September 14, 1999, and ordinance no. 5-1994, as amended September 14, 1999.

In response to the Maretts refusing to pay tap-in and user fees regarding the borough's new sewer system, the borough conducted a hearing and resultantly passed a motion to disconnect the borough's water service to the Maretts' property. The Maretts appealed to this court challenging the legality, validity, and constitutionality of the ordinances.

By agreement of the parties, and pursuant to 2 Pa.C.S. §754(a), this court heard the appeal de novo to determine whether the action of the borough was valid. Both parties presented testimony as well as exhibits. At the

conclusion of the hearing, the borough requested leave to depose an engineering expert for the purpose of rebutting testimony by the Maretts' engineering expert. Ultimately, the borough declined to depose its proposed expert.

This court has jurisdiction of this matter pursuant to the Local Agency Law, 2 Pa.C.S. §§752-754.

The scope of review of this court, where it has conducted a de novo hearing pursuant to 2 Pa.C.S. §754(a), as in the instant case, is that the court "must act as a nisi prius court, weighing the evidence and making its own findings of fact and conclusions of law . . . ." *The Board of Pensions and Retirement of the City of Philadelphia v. Einhorn,* 65 Pa. Commw. 144, 148, 442 A.2d 21, 23 (1982).

## FINDINGS OF FACT

From the evidence presented during the de novo hearing, the court finds as follows:

(1) The property at issue is owned by the Maretts, consisting of two separate properties, one commonly known as the Depot Shops and the other as the Railroad Cars, both situated in the borough.

(2) The borough has developed into a tourist attraction due to the growing number of novelty and retail shops within its borders.

(3) The Pennsylvania Department of Environmental Resources (now the Pennsylvania Department of Environmental Protection) required the borough to construct a sewage disposal system.

(4) In planning and constructing the system, it was necessary to take into account the rise in the number of people entering the borough during the tourist season.

(5) The borough enacted the ordinances pertaining to the new sewage system and included rates to be applied for the system's construction and use.

(6) The ordinances set forth the tap-in fees with regard to the sewage system and the monthly charge to be collected as user fees from the property owners who tapped into the sewer system within the borough.

(7) The borough failed to perform any studies with regard to determining the cost of maintaining the sewer system prior to enacting the ordinances.

(8) There is no provision within the ordinances that defines equivalent dwelling unit (EDU).

(9) The borough does not consider structures such as barns and garages as EDUs.

(10) Members of the borough's council, such as Morris Green, Roxanne Johnston, and Robert McGary, as well as other residents of the borough, do not pay tap-in fees or user fees for structures, such as barns and garages, on their property, not connected to the sewer system.

(11) Morris Green owns a house in the borough in which he lives and which includes one apartment. He also utilizes part of the house as a bed and breakfast facility, known as The Candleford Inn, which he rents to the public.

(12) Green is charged two separate tap-in fees and user fees; one for the apartment and the other for the remain-

der of the house that he uses for his home. He is not charged a tap-in fee or user fee with regard to the additional use for the bed and breakfast business.

(13) Subsequent to the September 14, 1999 amendments to the ordinances, the borough charged the Maretts with 11 tap-in fees at $550 per tap-in and user fees in the amount of $41.86 per use, with regard to the Depot Shops regardless of whether or not the shops were connected to the sewer system.

(14) In addition, the Maretts were charged with four tap-in fees at $550 per tap-in fee and user fees in the amount of $41.86 per use, with regard to the Railroad Cars regardless of whether or not the shops were connected to the system.

(15) The Maretts contested the tap-in fees and user fees to both shops and refused to pay the borough, asserting these shops were not connected to or utilizing the sewer system.

(16) In response to the Maretts refusing to pay the tap-in fees and user fees, the borough, giving prior notice to the Maretts, conducted a hearing on April 11, 2000, regarding the delinquent tap-in fees and user fees.

(17) The record is devoid of any reference to the Maretts attending and participating in the hearing.

(18) After the hearing, the Maretts were notified, on April 13, 2000, that the borough had passed a motion to disconnect the water service at the Depot Shops, effective April 27, 2000, at 10 a.m. The Railroad Cars, never having been connected for water service, were not effected by the motion.

(19) Upon receiving the notice of the water shut-off, the Maretts filed an appeal to this court on April 25, 2000, challenging the legality, validity, and constitutionality of the ordinances.

## DISCUSSION

A trial court's standard of review of a sewer rental rate ordinance of a borough organized under the laws of Pennsylvania is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or an arbitrary establishment of the rate system in question. *Brandywine Homes v. Caln Township Municipal Authority,* 19 Pa. Commw. 193, 200, 339 A.2d 145, 148 (1975).

Because the issue raised of whether the ordinances are being applied unfairly to the Maretts' property is dispositive of this appeal, the court will not address the remaining contentions of the Maretts enumerated in their original appeal.

In support of their assertion that the borough has unfairly applied the ordinances to their property, the Maretts first argue that the borough has abused its discretion in applying sewer rates under the ordinances, reasoning there is no reasonable relationship between the sewer charges imposed and the value of services rendered. The Maretts rely on the argument that they are being charged tap-in fees and user fees for the sewer system with regard to property not connected to or using the sewer system.

Furthermore, the Maretts feel that the borough has abused its discretion with regard to the fees, because the rates are not being applied uniformly and, thus, are be-

ing applied unfairly to their properties, pointing out that there are structures within the borough that are not connected to the system and are not being charged the tap-in fees or user fees.

The Maretts further insist that the borough is not in a position to establish a reasonable and uniform rate system, because they have no data to determine reasonable and uniform rates. The Maretts claim that the necessary data used in assessing a fair rate is not available, because the borough did not perform any studies or collect any information regarding the cost of maintaining the new sewer system.

The borough counters that, although the Maretts are being charged for structures not connected to the sewer system, their property still receives a benefit of the system and, therefore, the Maretts should be expected to contribute to paying for the construction and maintenance of the system. The borough argues that the rise in the number of shops within the borough and the influx of tourists precipitated the need for a new sewer system. The borough contends that the ordinances were enacted so that the cost of the system was assessed, not only upon the residents of the borough, but also to the retail shop owners. The borough goes on to argue that all retail shops were charged tap-in fees and user fees whether or not connected to the system, because all who benefit from the system should pay for it. The borough asserts that the retail shops, whether or not connected to the sewer system, are benefiting because the tourists coming into the area to purchase items need the convenience of restroom facilities.

Pennsylvania law clearly holds that sewer rental rates are not to be based solely on services actually consumed. *Life Services Inc. v. Chalfont-New Britain Township Joint Sewage Authority,* 107 Pa. Commw. 484, 490, 528 A.2d 1038, 1041 (1987). Sewer rates must also bear a reasonable relation to the value of services rendered, either as actually consumed or as readily available for use. *Id.; Ack v. Carroll Township Authority,* 661 A.2d 514 (Pa. Commw. 1995). For assessed sewer rates to be reasonably related to the value of services rendered, there must be some benefit to the individual being charged. *Township of Kennedy v. Ohio Valley General Hospital,* 129 Pa. Commw. 494, 499, 566 A.2d 348, 351 (1989).

In *Hamilton's Appeal,* our Supreme Court, reflecting on the meaning of the type of benefit to be received, ruled that sewer rates must he proportional to the value of services rendered. The court reasoned that properties not connected to the sewer system received no benefit stating "[n]or, can the charge be sustained on any theory of supposed special benefits arising from the mere presence or availability for use of the facility." *Hamilton's Appeal,* 340 Pa. 17, 23, 16 A.2d 32, 35 (1940). The court held that it was unlawful, therefore, for properties to be charged when they were not connected to the system or connected to it but not utilizing it.

As applied here, the borough's argument that the Maretts received a benefit because customers of the retail shops, owned by the Maretts, may use or will use restroom facilities connected with the sewer has to fail. The Maretts are paying tap-in fees and user fees for the structures they own and are indeed connected to the sewer

in the borough. The Maretts' argument lies with those structures being charged which do not have sewer hook-ups. With these properties, the sewer rate structure imposed by the borough is, therefore, unlawful.

The Maretts also argue that the rate system imposed by the borough is not uniformly applied to all property owners in the borough. The Maretts note that several members of the borough's council, such as Morris Green, Roxanne Johnston, and Robert McGary, as well as other residents of the borough, have structures on their property but do not pay tap-in fees or user fees for the structures, because they are not connected to the sewer system.

"[A] municipality may create classifications of users so long as a charge is uniform within the classification and is reasonably proportional to the service rendered." *Glen Riddle Park Inc. v. Middletown Township,* 11 Pa. Commw. 574, 581, 314 A.2d 524, 527 (1974); *Fairwood Manor Associates v. Borough of Irwin,* 98 Pa. Commw. 474, 478, 511 A.2d 936, 938 (1986). Here, the emphasis is on the classification upon which a sewer rate is to be imposed.

Uniform sewer rates in situations where the term EDU has been specifically defined and each EDU benefits from the sewer system in an identical manner have been upheld as valid. *Curson v. West Conshohocken Municipal Authority,* 148 Pa. Commw. 386, 391, 611 A.2d 775, 776 (1992). In the present case, the ordinances refer to several examples of what types of structures are to be included in the rate structure. Ordinance no. 4-1994, as amended, reads, in pertinent part, as follows:

"Section 1—Connection required: Every owner of property in the Borough of Volant whose property is benefited, improved or accommodated by a sanitary sewer shall connect, at its own cost, the house, building or other structures located on said property with the aforementioned sanitary sewers in accordance with provisions of this ordinance.

"If two or more uses, such as, but not limited to, two or more dwellings, two or more apartments, two or more stores, two or more offices, two or more commercial units, two or more industrial units, or two or more dissimilar uses, are connected through a single lateral, or if two or more uses as aforesaid are in the same structure whether connected by the same connection fee imposed by this ordinance shall be computed by treating each such use so that a separate sewer connection fee is payable for each such separate use or portion of property as a separate use."

Ordinance no. 5-1994, as amended, reads, in pertinent part, as follows:

"Section 1—In order to pay the operation and maintenance costs of the borough in connection with said sewer system, and to pay the obligations of the borough in connection with said sewer system, there is hereby imposed upon each property/use in the Borough of Volant, whether or not such property/use is connected to the sewer system, a monthly charge of $41.86 per use.

"If two or more uses, such as but not limited to, two or more dwellings, two or more apartments, two or more stores, two or more offices, two or more commercial units, two or more industrial units, or two or more dissimilar

uses, are located within the same structure, whether or not it/they are connected to the sewer system, it is hereby imposed upon each said use a monthly charge of $41.86 per use."

However, the ordinances use the language "such as, but not limited to" followed by a short list of entities upon which the user fees and tap-in fees are to be assessed. (Ordinance no. 4-1994(b) and ordinance no. 5-1994(a).) There is no specific definition of the term EDU in the ordinances. It can be argued, therefore, that other structures in the borough, such as garages and barns, as well as the "Sprint Building," should be included within the meaning and, accordingly, charged the tap-in fees and user fees in question.

Furthermore, the ordinances state that, if there are two or more dissimilar uses within one structure, there should be a charge of $41.86 per use as well as a tap-in fee for each use. Unrefuted testimony of the Maretts shows that a bed and breakfast structure, owned by Morris Green, located within the borough, does not pay an additional tap-in fee or user fee for the use of the facility for purposes of running the bed and breakfast operation. Green is, consequently, only charged tap-in fees and user fees for his home and the apartment located therein and not for the separate use of the property as a bed and breakfast business.

The court concludes, therefore, that the sewer rate system imposed in the borough is not applied reasonably and uniformly.

In addition, the Maretts argue that the borough is not in a position to assess rates in a uniform or reasonable

manner, because the borough failed to perform any studies with regard to maintaining the system. The Commonwealth Court has consistently required data concerning the costs of treating or maintaining a system when determining whether a sewer system rate structure is arbitrary. *Glen Riddle Park Inc. v. Middletown Township,* 11 Pa. Commw. 574, 580, 314 A.2d 524, 527 (1974); *Ack* at 519. Here, as a reasonable rate for sewage service cannot be set, if the borough, in setting the rates, had no relevant data regarding the cost of maintaining the facility on which to rely, this court must conclude that the sewer rate system of the borough is arbitrary.

## CONCLUSIONS OF LAW

(1) As the rate system imposed by the borough includes properties not connected to or receiving sewage services, and rates imposed by the borough do not bear a reasonable relation to the value of services rendered, either as actually consumed or readily available for use, the sewer rate system of the borough is unlawful and unenforceable.

(2) The borough's sewer rate system is unenforceable as to the Maretts, none of the shops at the Railroad Cars are connected and not all of the shops at the Depot Shops are connected to the sewer system and, thus, all of the Maretts' property do not receive a benefit that warrants all of the property being assessed tap-in fees and user fees.

(3) The ordinances are not valid, since the borough has not specifically defined the classifications of EDUs to be charged sewer rental rates.

(4) The borough's sewer rate system is neither uniform nor reasonable, because no studies were performed to determine the cost of maintaining the sewer system and, therefore, the ordinances are invalid.

(5) The sewer rate system of the borough as reflected by the ordinances, based upon the court's findings of fact and applicable law, was established arbitrarily and, therefore, was an abuse of discretion.

(6) The sewer rates reflected in the ordinances implementing the sewer rate system are invalid and unenforceable.

(7) The action of the borough initiating water shut-off procedures against the Maretts is invalid.

The accompanying order implements the determinations of this court.

## ORDER

In accordance with the appended opinion, the court directs that ordinance no. 4-1994, as amended September 14, 1999, and ordinance no. 5-1994, as amended September 14, 1999, of the Borough of Volant are invalid and unenforceable. The court also vacates the April 13, 2000 action of the Borough of Volant ordering a disconnect of water service at the Depot Shops, effective April 27, 2000.

The prothonotary shall properly serve notice of the instant order upon counsel of record.