Glen Riddle Park, Inc. and Tunbridge Corporation and Frank R. Iacobucci, et al. t/a Glen Associates, Appellants, *v.* Middletown Township and Middletown Sewer Authority, Appellees.

Argued October 4, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*F. Martin Duus*, with him *Arthur Levy, Stephen J. McEwen, Jr.* and *Fronefield, deFuria and Petrikin*, for appellants.

*David A. Franklin*, with him *Robert B. Surrick, Harry F. Dunn, Jr.* and *Townsend, Elliott & Munson*, for appellees.

OPINION BY JUDGE CRUMLISH, JR., January 22, 1974:

This is an appeal from an Opinion and Order of the Court of Common Pleas of Delaware County dated April 2, 1973, sustaining the validity of the sewer rental rate ordinances of Middletown Township and the rates imposed thereunder, and entering judgment in favor of the said Township against Glen Riddle Park, Inc.

This action was instituted by Middletown Township (Township) and the Middletown Township, Delaware County, Sewer Authority (Authority) by the filing of a municipal lien against Glen Riddle Park, Inc. (Glen Riddle) for unpaid sewer rentals. (The remaining Appellants were permitted to intervene by stipulation in the action in the court below.)

Glen Riddle is the owner of property in Middletown Township upon which has been constructed a 99 unit apartment complex. Glen Riddle is serviced by a sewer main constructed by the above-mentioned Sewer Authority.

The Authority was organized and incorporated by Middletown Township, a Township of the Second Class, pursuant to the Municipality Authorities Act, Act of May 2, 1945, P. L. 382, as amended, 53 P.S. §301, for the purpose of financing, constructing, and leasing a sanitary sewage disposal system in the Chester Creek Watershed of the Township.

The Authority constructed the system with funds obtained from bonds issued by the Authority on May 8, 1968 in the principal sum of $2,980,000. The sewer system was then leased by the Authority to the Township by a "Sewer System Lease" dated May 1, 1968. The lease rental under the agreement was fixed at a level sufficient to meet the amortization of the Authority's bond issue, and the expenses of administration, operation, maintenance and treatment. The lease contains a covenant that the Township will enact ordinances imposing annual sewer rentals and other charges

on the users of the system sufficient to pay the lease rentals.

On May 2, 1968, the Township enacted Ordinance No. 106 which established a flat quarterly sewer rental of $40.20 per dwelling unit, house or apartment, and also imposed sewer rentals on commercial and industrial establishments based upon the amount of water used by the particular business concern.

On November 10, 1969, the Township enacted Ordinance No. 129, reducing all sewer rental rates, specifically fixing the rate for "single dwelling" units at $34.00 per quarter and reducing the rate for apartments to $26.00.

Glen Riddle, on July 8, 1970, connected its 99 unit apartment complex to the sewer facilities herein described. Pursuant to the applicable Ordinances of the Township, sewer rental bills have been submitted to Glen Riddle, in due and proper fashion, and Glen Riddle has refused to pay any portion of these billings.

Accordingly, a municipal lien was filed by the Township and the Authority against Glen Riddle on May 21, 1971. Subsequently, Glen Riddle waived the issuance of the Writ of Scire Facias and filed an answer to the municipal claim. The matter was presented to the Court of Common Pleas of Delaware County, and after the filing of stipulations, hearings, and argument, the Common Pleas Court on April 2, 1972, filed an Opinion and Order entering a judgment in favor of the Township and Authority.

Glen Riddle and the additional Appellants appeal this ruling to this Court.

The Appellants argue that the Authority and the Township acted improperly in using the sewer rentals imposed by the Township against the properties connected to the system *as the sole method of financing the cost of construction of the sewer system.* In essence, the Appellants contend that neither the Township nor

the Authority has the statutory authority to impose construction costs by the sewer rental method, placing greater emphasis on the Township's lack of specific statutory power due to the lease-back arrangement prevalent here.

Section 4B(h) of the Municipal Authorities Act of 1945, Act of May 2, 1945, P. L. 382, as amended, 53 P.S. §301 et seq. (Act) provides: "B. Every Authority is hereby granted, and shall have and may exercise all powers necessary or convenient for the carrying out of the aforesaid purposes, including but without limiting the generality of the foregoing, the following rights and powers: . . .

"(h) *To fix, alter, charge and collect rates and other charges in the area served by its facilities at reasonable and uniform rates,* to be determined exclusively by it, *for the purpose of providing for the payment of the expenses of the Authority, the construction,* improvement, repair, maintenance and operation *of its facilities and properties.* . . . (Emphasis added.)

In *Turley v. North Huntingdon Township Municipal Authority,* 5 Pa. Commonwealth Ct. 116, 289 A. 2d 509, this Court determined that an authority had the power to finance sewer line construction by simultaneously imposing a uniform reasonable charge (sewer rental), as permitted by the above-quoted language, and a charge to the properties benefited based upon front footage of the property, as permitted under Section 4B(s) of the Act. Implicit in this decision and clear from a reading of the statutory language that gives the Authority the power "[T]o fix, alter, charge and collect rates: for construction is the determination that an Authority may use both or only one of the granted methods to provide for the payment of sewer line construction.

Appellants alternatively argue that even if the Authority possesses the requisite power to finance sewer construction solely by imposing a sewer rental, it is the

Township, and not the Authority, through the lease-back arrangement, which imposes the sewer rental. This being so, the Township must have its own legislatively granted power to use only sewer rentals to finance sewer construction. The Appellants, of course, contend that there is no such statutory authority.

We disagree with Appellants.

The Sewer Rental Act, Act of July 18, 1935, P. L. 1286, §1, as amended, 53 P.S. §2231 provides in pertinent part: "Whenever any county of the second class, city, borough, incorporated town, or township, either singly or jointly with other municipalities or townships . . . (c) has entered or shall hereafter enter into any contract with any authority established in accordance with law or with any private corporation for the design or construction of sewers . . . such county of the second class, city, borough, incorporated town, or township may provide by ordinance or resolution, enacted either before or after the acquisition or construction thereof, or the entry into such contract, for the imposition and collection of an annual rental, rate or charge for the use of such sewer . . . from the owners of, or the users of water in or on the property served or to be served by it . . . ."

Section 2 of the Sewer Rental Act is also particularly relevant: "Any such annual rental, rate or charge may be, but shall not be limited to, such sum as may be sufficient to meet any or all of the following classes of expense: . . . (b) such annual amount as may be necessary to provide for the amortization of any indebtedness incurred or non-debt revenue bonds issued . . . *or as may be sufficient to pay the amount agreed to be paid annually under the terms of any contract or lease with any authority or private corporate furnishing, or undertaking to design or construct facilities with which to furnish sewer, sewerage or sewer treatment services*

*to such . . . township or its inhabitants . . . .* (Emphasis added.) 53 P.S. §2232.

This is exactly the situation here. The Authority has leased the constructed sewer facilities to the Township and the Township has imposed sewer rental charges sufficient to cover the amortization of the bond issue used to finance the whole sewage system. To us, it is clear that the Township possesses the requisite statutory authority to impose a sewer rental under the facts related herein.

Appellants also contend that the Township and Authority committed a manifest abuse of discretion and were purely arbitrary in the execution of their duties in fixing the sewer rental rates. Specifically, Appellants complain that apartments are charged a flat annual rate of $104 per unit, whereas industrial and commercial users are charged a flexible rate based upon metered consumption, and that this process violates the legislative mandate that rates ". . . shall be apportioned equitably among the properties served . . . ."[1]

In examining this contention, we are mindful of our scope of review in these matters: ". . . courts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, capricious action or abuse of power; they will not inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution. It is true that the mere possession of discretionary power by an administrative body does not make it wholly immune from judicial review, but the scope of that review is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. That the court might

---

[1] The Sewer Rental Act, Act of July 18, 1935, P. L. 1286, §2, as amended, 53 P.S. §2232.

have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; judicial discretion may not be substituted for administration discretion." *Blumenscheim v. Pittsburgh Housing Authority*, 379 Pa. 566, 573, 109 A. 2d 331, 335 (1954); *Turley, supra.*

In reviewing the cases in the area, we find that a municipality may create classifications of users so long as the charge is uniform within the classification and is reasonably proportional to the service rendered. *Greenville Borough v. Guerrini*, 208 Pa. Superior Ct. 42, 220 A. 2d 366 (1966); *Hickory Township v. Brockway*, 201 Pa. Superior Ct. 260, 192 A. 2d 231 (1963). Since all apartments pay the same rate,[2] it is obviously uniform.

The remaining question is whether the sewer rental rate is reasonably proportional to the services rendered. A careful review of the record and the statistics supplied by Appellants leads us to conclude that Township did not flagrantly and manifestly abuse the discretion vested in it when it assigned the $26.00 per quarter rate to apartments.[3] Although this Court may have a different opinion or judgment on the wisdom of the rates and classifications imposed by the Township, the sole question for us to consider is whether the Township has committed a manifest abuse of discretion. The burden of proving such an abuse is a heavy one and here the Appellants have faltered.

Order affirmed.

---

[2] It is clear that apartments may be classified as separate units for billing purposes. *Brown v. Pennsylvania P.U.C.*, 152 Pa. Superior Ct. 58, 31 A. 2d 435 (1943).

[3] It is true that the Appellants would pay a lower rate if such rate is based on metered consumption. However, it should also be pointed out that apartments are not the only classification which has a flat rental rate. Single dwelling units are assessed at a flat rate of $34.00 per quarter.