**GOODWAY MARKETING, INC.**

v.

**FAULKNER ADVERTISING ASSOCIATES, INC.**

**Civ. A. No. 82–0066.**

United States District Court, E. D. Pennsylvania.

Aug. 2, 1982.

Joseph I. Fineman, Law Offices of Jerome Taylor, Philadelphia, Pa., for Goodway Marketing, Inc., plaintiff.

Charles J. Bloom, Hunt, Kerr, Bloom Hitchner, O'Brien & Conrad, Philadelphia, Pa., for Faulkner Advertising Associates, Inc., defendant.

## MEMORANDUM

GILES, District Judge.

Faulkner Advertising Associates, Inc. ("Faulkner") has moved for summary judgment. Plaintiff, Goodway Marketing, Inc. ("Goodway") filed the underlying complaint claiming Faulkner owed it certain sums. In this motion, Faulkner asserts that the amount owed was disputed and was resolved by accord and satisfaction. Jurisdiction exists under 28 U.S.C. § 1332, based upon diversity of citizenship and an amount in controversy in excess of $10,000. For the following reasons, Faulkner's motion shall be granted.

Rule 56(c) of the Federal Rules of Civil Procedure requires the court to enter summary judgment whenever it appears from the record that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Faulkner, therefore, has the burden of showing that all material facts are undisputed. The court must consider all evidence in the light most favorable to Goodway, the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once a moving party sustains its burden, the non-movant must come forward with opposing evidentiary matter beyond the allegations in the pleadings showing the existence of a disputed issue of material fact. *Id.* Applying these standards to the undisputed facts, it is apparent that an accord and satisfaction exists as a matter of fact and law.

Goodway, a nationwide producer of promotional newspaper inserts, contracts to develop, print and distribute newspaper advertisements placed in newspapers designated by its clients. In the instant case, Goodway contracted with Nissan Motor Corp. U.S.A. ("Nissan"), the manufacturer and distributor of Datsun automobiles and trucks, to develop a spring advertising campaign.

Faulkner is an advertising agency. One of its major accounts is a group of Datsun dealers who were included within the market areas targeted for Goodway's campaign. Faulkner, and a number of other advertising agencies holding Datsun accounts, contracted with Goodway in the form of purchase orders for the printing and distribution of the Nissan inserts in their respective geographical areas. Faulkner's role was to submit forms to Goodway designating the dealers to appear in the insert, the number of inserts desired and the newspaper in which the insert was to appear. Faulkner was also responsible for collecting payments for the advertising from its accounts, and remitting the full amount to Goodway, less its commission. The present controversy involves a dispute over the amount of Faulkner's commission.

At the close of the advertising campaign Goodway requested payment of $301,640.05 from Faulkner, a figure based on the total payments due from Faulkner's accounts minus Goodway's calculation of Faulkner's commission. However, Faulkner believed

the agreed upon commission to be higher, so in remitting payment to Goodway, Faulkner deducted the commission believed due. A check for $268,936.28 was issued to Goodway. Goodway admits that it was fully aware that Faulkner's tendered payment was less than the amount it demanded and, further, that Faulkner's payment was proffered as a compromise of the disputed debt. The check was mailed to Goodway on September 16, 1981 with a letter containing an express statement that payment was being offered on the condition and understanding that

> any deposit, cashing, certification, endorsement or other negotiation or transfer of the enclosed check will constitute your company's [Goodway's] agreement to accept the payment indicated in full satisfaction of all present and prior claims as aforesaid. These terms are non-negotiable, and if unacceptable, the check should be returned to me [Faulkner].

The letter stated that Faulkner would stop payment on October 1, 1981. This gave Goodway approximately 12 days in which to cash the check or return it if the terms were unsatisfactory. The face of the check itself was clearly marked in red ink with the phrase, "restricted check see reverse". A release, restriction and agreement were printed on the back. Goodway cashed the check and retained the money. Nothing in the record demonstrates that it protested the release legend. Subsequently, Goodway filed suit seeking a return of Faulkner's "overpayment."

■ The case of *Law v. Mackie*, 373 Pa. 212, 95 A.2d 656 (1953), provides a clear statement of the doctrine of accord and satisfaction in the Commonwealth of Pennsylvania.[1]

An accord and satisfaction is the result of an agreement between the parties which may be and usually does result from an implied agreement arising from the circumstances. If an agreement stems from a disputed claim, the acceptance of an amount less than the creditor claims to be due, when tendered by the debtor in full satisfaction of the creditor's claim, becomes a completed accord and satisfaction. When [the settlement checks were cashed] there was a final acceptance of the offer of settlement and an accord and satisfaction resulted, unless vitiated by fraud, deception or some other invalidating element.

*Id.* at 222, 95 A.2d at 660.

■ Under *Mackie*, the essential elements of an accord and satisfaction are a disputed debt, a clear and unequivocal offer of payment in full satisfaction of the debt and acceptance and retention of payment by the offeree. Here, the undisputed facts establish that there was an unliquidated debt, that Faulkner tendered an unequivocal offer of payment, and that Goodway cashed the check and kept the payment. Goodway does not dispute these facts, but instead contends that there is a material issue as to the validity of the accord and satisfaction.

■ First, it asserts that an accord and satisfaction can operate only between parties in the status of debtor and creditor and that the parties in this action stood in an agency relationship, instead of a debtor-creditor relationship. In Pennsylvania "[t]he basic elements of agency are 'the manifestation by the principal that the agent shall act for him, the agent's accept-

---

1. The parties have assumed that Pennsylvania law applies in this case and I find no reason to differ with that conclusion. In a diversity case, a federal court must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Pennsylvania has adopted a two-prong analysis for choice of law conflicts. *Griffith v. United Airlines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964) (tort action); *Gillan v. Gillan*, 236 Pa.Super.Ct. 147, 345 A.2d 742 (1975) (con-

tract action). The courts consider both the significance of the parties' contacts with the states involved and the policy interests of those states in the controversy. Goodway had the primary duties of performance in this contract. Goodway performed its duties within the state of Pennsylvania, has its principal office in Pennsylvania and is a citizen of the state. On balance, it appears that Pennsylvania law should control.

ance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking.'" *Scott v. Purcell*, 490 Pa. 109, 117, 415 A.2d 56, 60 (1980) (quoting Restatement (Second) of Agency, § 1(1) comment b (1958)). It is not necessary that the parties explicitly state their intention to create an agency relationship, but their intention must be clear from their conduct. *Brock v. Real Estate-Land Title & Trust Co.*, 318 Pa. 49, 178 A. 146 (1935). *Accord Falconer v. Mazess*, 403 Pa. 165, 168 A.2d 558 (1961). Thus, the agent must consent to act primarily for the benefit of the principal, subject to the principal's control.

■ Even if Goodway is correct in arguing that accord and satisfaction does not apply to an agency relationship, Goodway has brought forth no evidence whatsoever to support the existence of such a relationship.[2] The burden of establishing the existence of an agency relationship rests on the party making the assertion. *Scott v. Purcell*, 490 Pa. 109, 117 n.8, 415 A.2d 56, 60 n.8, (1980); *Girard Trust Bank v. Sweeney*, 426 Pa. 324, 329, 231 A.2d 407, 410 (1967).

■ Moreover, the record shows that Goodway was a creditor since it had acquired a right to payment from Faulkner. A creditor can be broadly defined as one who has the legal right to require the performance of a legal obligation or contract, or who has a legal right to damages growing out of contract or tort. Blacks Law Dictionary 332 (rev. 5th ed. 1979). *See also Merwine v. Mt. Pocono Light & Improvement Co.*, 304 Pa. 517, 523, 156 A. 150 (1931) (a creditor is one "having a cause of action capable of adjustment and liquidation upon a trial"); *cf.* Uniform Fraudulent Conveyance Act, 39 Pa.Stat.Ann. § 351 (Purdon 1954) (a creditor is "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent"). Goodway, as a creditor, was owed a disputed amount which was capable of resolution through an accord and satisfaction.

■ Goodway also maintains that the accord and satisfaction is invalid because Goodway accepted Faulkner's payment under economic duress and coercion. Even assuming duress is a ground for invalidating an accord and satisfaction, *Law v. Mackie*, 373 Pa. 212, 229, 95 A.2d 656, 664 (1953), Goodway advances no evidence of any duress.

The Pennsylvania Supreme Court has defined duress in contractual disputes as "that degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness.... Moreover, [without] threats of actual bodily harm there can be no duress where the contracting party [can] consult with counsel." *Carrier v. William Penn Broadcasting Co.*, 426 Pa. 427, 431, 233 A.2d 519, 521 (1967) (quoting *Smith v. Lenchner*, 204 Pa.Super.Ct. 500, 504, 205 A.2d 626, 628 (1964)).

A recent decision of this court, *Levin v. Garfinkle*, 492 F.Supp. 781 (E.D.Pa.1980), aff'd, 667 F.2d 381 (3d Cir. 1981), also provides guidance as to the elements necessary to establish duress in a commercial setting. In *Levin*, the plaintiff attempted to avoid a contract, contending that he had signed it involuntarily and under economic duress. In evaluating plaintiff's claim, the court stated, "[i]n order to establish duress, it is necessary to prove that (1) serious economic injury was imminent, (2) exerting such pressure that the party involuntarily executed an agreement leading to economic loss, and (3) there was no immediate legal remedy available as an alternative to executing the agreement." *Levin*, 492 F.Supp. at 807.

■ Faulkner's uncontradicted affidavit states that Goodway gave no notice that it was accepting the check under protest or duress. Goodway now claims that a condition of economic duress and coercion existed since it had already paid for the total cost

---

**2.** The mere fact that Faulkner is an advertising agency or characterized itself as the "agency" in this transaction does not make it Goodway's agent.

of the project and Faulkner's invoice represented one quarter of this amount. As a matter of law, this is not sufficient to establish duress. Goodway is simply arguing that it was forced to make a choice between accepting a lesser amount or litigating to obtain the full amount claimed. These facts, far from establishing duress within the definitions in *Carrier* and *Garfinkle,* only illustrate those anticipated elements of commercial compulsion present in any arms-length transaction. This is insufficient as a matter of law to vitiate the effect of the accord and satisfaction which is clearly present from the undisputed facts.[3]

Faulkner's conditional tender of payment of an unliquidated debt presented Goodway with two options, either to accept the payment, which would constitute assent to Faulkner's terms, or to reject the check and bring suit for the full amount that Goodway alleged was due. In choosing to accept and retain the payment, Goodway manifested accord and the debt was satisfied. The undisputed facts do not support Goodway's claim that Faulkner was acting as Goodway's agent, nor that Goodway acted under duress in accepting payment. Thus, I find as a matter of law that there was an accord and satisfaction and that Faulkner is entitled to summary judgment.

---

**3.** Goodway also argues in its brief supporting its reply to Faulkner's motion that coercion was present because Faulkner was its only source of payment on the Nissan contract. Statements made in counsel's briefs are not evidence for purposes of establishing a disputed issue of material fact under Federal Rule of Civil Procedure 56.