## East Pikeland Township v. Lowrey

*James C. Sargent,* for plaintiffs.
*Olan B. Lowrey,* for defendants.

WOOD, *J.*, November 25, 1986—

## FINDINGS OF FACT

(1) Plaintiffs are Valley Forge Sewer Authority and East Pikeland Township. VFSA is a municipal corporation, created in 1969 pursuant to the Municipal Authorities Act of 1945, 53 P.S. §301 et seq.

(2) VFSA operates and maintains a public sanitary sewer collection system and treatment plant serving East Pikeland and other nearby communities.

(3) Defendants are Olan B. Lowrey and Margot Lowrey, adult individuals who own a multiple-unit dwelling located on property at the corner of Kimberton and Hares Road, East Pikeland Township, Chester County, Pa.

(4) East Pikeland Township Ordinance No. 25, enacted by the board of supervisors on October 14, 1971, provides that any persons owning an occupied building in East Pikeland Township accessible to the sewer system shall, at their own expense, connect the building with the sewer system within 60 days after written notice to them from the township.

(5) The property owned by defendants is within the area served by the VFSA.

(6) By resolution passed October 28, 1971, VFSA imposed on each owner of each property required to be connected to the sewer system a connection charge of $100 for each connection to the system, and an annual sewer rental fee of $178 per sewer rental unit. The resolution establishes a schedule of sewer rental unit values, rating the various categories of occupied buildings in terms of sewer rental units, or equivalent dwelling units (EDU). An EDU assumes that the average dwelling unit within that

classification will produce approximately 250 gallons of sewage per day.

(7) According to this schedule, a single-family dwelling is rated as one sewer rental unit or EDU. Also, according to this schedule, each apartment unit in an apartment house is rated as one EDU.

(8) Section 9 of the resolution provides for interest and a penalty to be assessed on bills not paid within 60 days from the date due.

(9) By resolution passed September 4, 1975, VFSA imposed upon each owner of each property con- nected to the sewer system a tapping fee of $700 per sewer rental unit, or EDU.

(10) The VFSA also imposes a front-footage assessment of $7.50 per front foot against each property connected to the sewer system.

(11) By resolutions passed from 1975 to 1983, the connection charge was raised to $200, the sewer rental rate rose to $280 per sewer rental unit, and the tapping fee was set, in 1983, at $980 per sewer rental unit.

(12) In 1977, there were two occupied apartments in the defendants' apartment house. In 1982 there were four occupied apartments, and since 1983, there have been five occupied apartments in the building.

(13) In July 1977, the VFSA sent notice to defendants to hook into the sewer system and to pay the required fees, assessments and rentals. Defendants refused to hook into the system until 1983.

(14) Since 1977, VFSA has charged defendants $7,130 in sewer rental fees, $1,988.01 in interest and $671.70 in penalties.

(15) Since 1977, defendants have paid $749.03 in sewer rental charges. The outstanding sewer rental fees assessed against defendants totals $9,040.18.

(16) In 1977, VFSA charged defendants $125 as a connection fee. Defendants connected with the sewer system in 1983, at which time the connection fee had been increased to $200.

(17) Defendants have paid $200 for the connection fee. The outstanding interest and penalties assessed on the fee since 1977 total $100.39.

(18) Since 1977, VFSA has charged defendants tapping fees computed according to the number of occupied apartments on the property.

(19) Defendants have paid $700 in tapping fees. Outstanding tapping fees assessed against defendants total $5,198.26.

(20) In 1977, defendants were charged $1,726.50 in front-footage assessment.

(21) In 1981, the assessment, plus interest, totalled $2,224.66. At that time, defendants paid $2,100 against the assessment. The outstanding front footage assessment is $188.63.

## DISCUSSION

In 1983, plaintiffs commenced this action in equity to compel defendants to connect their property to the Valley Forge sewer system, and to recover the outstanding assessment fee, tapping fees, connection charge, and sewer rental. After commencement of this action, defendants connected their property to the sewer system, but refused to pay the amounts billed by the VFSA.

Plaintiffs have moved for summary judgment.

Defendants acknowledge that the VFSA has billed them for sewer rental, tapping fees, connection fees and front-footage assessment in accordance with the township ordinances and the regulations passed by the VFSA. Defendants further acknowledge that as to the connection fee and

front-footage assessment they are responsible for paying the amount designated by regulation. As to these two charges, defendants assert that they have paid both charges in full and that there was an accord and satisfaction between the parties.

Pa. R.C.P. 1030 states:

"All affirmative defenses including but not limited to the defenses of accord and satisfaction . . . shall be pleaded in a responsive pleading under the heading 'New Matter.' "

Defendants have not pleaded accord and satisfaction as new matter, but rather, have asserted this defense for the first time in their answer to plaintiffs' motion for summary judgment.

In their answer to plaintiffs' motion regarding the connection fee, defendants state:

"(11) At the time the property was connected to the VSFA sewer system defendants were assessed a connection fee of $200 and paid such connection fee in full. They had tendered such fee theretofore but the Authority had declined to accept it unless payments regarded by defendants as unlawfull were also paid.

"(12) . . . . Defendants not only admitted liability for the sewer connection fee but paid such fee as recited in paragraph 11 hereinabove. . . . At any rate Valley Forge Sewer Authority agreed ultimately to accept $200 as the connection fee. . . . "

Regarding the front footage charge, defendants' answer states:

"(18), (19) and (20) The original front-footage assessment against defendants' property was $1,726.50. Defendants paid the full assessment owing. Defendants deny that $188.63 or any other amount is owed on the front-footage assessment. No claim was made for any amount in excess of that paid until present counsel for the authority raised

the matter in the latter part of 1985. This is another contested fact issue. There was accord and satisfaction."

Pa. R.C.P. 1035(d) states:

"When a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." (emphasis added). *Goodway Marketing Inc. v. Faulkner Advertising Associates Inc.*, 545 F. Supp. 263 (E.D. Pa., 1982) states:

"Once a moving party sustains its burden, the nonmovant must come forward with opposing evidentiary matter beyond the allegations in the pleadings showing the existence of a disputed issue of fact." *Goodway*, supra, 545 F. Supp. at 265.

The question is whether defendants' bald assertion that there was an accord and satisfaction is sufficient to show that there is a legitimate issue of fact. I conclude that it is not, because defendants have not set forth specific facts to support their allegation. The essential elements of an accord and satisfaction are: a disputed debt; a clear and unequivocal offer of payment in full satisfaction of the debt; and acceptance and retention of the payment by the offeree. *Goodway Marketing Inc. v. Faulkner Advertising Associates Inc.*, supra. Defendants have not set forth *specific* facts showing that they made a clear and unequivocal offer of payment in full satisfaction and that plaintiffs accepted it. Moreover, the record indicates that *at the time defendants paid the charges,* they did not dispute their liability for the charges. Now, of course, defendants contest the

amount charged as interest on the original fees. However, if there was no legitimate dispute at the time defendants paid the charges, there could be no accord and satisfaction. Accordingly, plaintiffs are entitled to summary judgment as to the connection fee and the front-footage assessment.

As for the tapping fees and the sewer rental charges, defendants have challenged the constitutional validity of the township ordinance and the regulations passed by the VFSA. The schedule of sewer rental units adopted by the VFSA classifies each apartment in an apartment house as equivalent to one EDU, the same as a single-family dwelling. Defendants criticize this classification, contending that a single apartment unit should not be charged at the same rate as a single-family dwelling since the amount of effluent created by the apartment dwellers is necessarily (and in his case, demonstrably) much less than that of a single-family residence.

Preliminary, I must decide whether defendants have used the proper procedure to attack the validity of the rate schedules, and whether this court, sitting in equity, has jurisdiction to consider the constitutionality of the regulations. The Municipal Authorities Act of 1945, 53 P.S. §306B (h) provides, in pertinent part:

"Any person questioning the reasonableness or uniformity of any rate fixed by any authority or the adequacy, safety and reasonableness of the authority's services, including extensions thereof, may bring suit against the authority in the court of common pleas of the county wherein the project is located, or if the project is located in more than one county then in the court of common pleas of the county wherein the principal office of the project is located. The court of common pleas shall have ex-

clusive jurisdiction to determine all such questions involving rates or service. . . ."

The question is whether a defendant in a proceeding brought to collect for the service rendered under the established rate schedules may assert as a defense the unconstitutionality of the rates.

The issue of the jurisdiction of an equity court to decide the reasonableness of a rate fixed by a municipal authority was squarely decided by the Supreme Court of Pennsylvania in *Calabrese v. Collier Township Municipal Authority*, 430 Pa. 289, 244 A.2d 662 (1968). In that case, residents of Collier Township instituted an action in equity against the township and the sewer authority seeking a review of the rates charged. The court held that 53 P.S. §306B (h) conferred exclusive jurisdiction upon the court of common pleas to decide questions of reasonableness of the rates, and that a court of equity has no jurisdiction to decide the question. The basis for this holding is that the Legislature has provided an adequate remedy at law for those property owners who question the reasonableness or uniformity of any rate fixed by any authority. This position is analogous to a long standing rule in zoning cases that the constitutionality of a zoning ordinance cannot be raised as a defense in an equity proceeding, since there exists a statutorily sanctioned procedure for raising those questions. See *Muncy Borough v. Stein*, 440 Pa. 503, 270 A.2d 213 (1970); *Honey Brook Township v. Alenovitz*, 430 Pa. 614, 243 A.2d 330 (1968); *Jacobs v. Fetzer*, 381 Pa. 262, 112 A.2d 356 (1955).

In this case, the charges which the VFSA seeks to recover against defendants were first assessed in 1977. In 1983, plaintiffs commenced this suit. From 1977 to 1983, defendants simply refused to pay the charges assessed against them; they did not bring

suit against the authority, as provided in 53 P.S. §306. Thus, they have not properly raised the issue of constitutionality of the ordinance and regulations. See also, *Patton-Ferguson Joint Authority v. Hawbaker*, 15 Pa. Commw. 402, 322 A.2d 783 (1974) (concurring opinion, Judge Kramer).

Moreover, it is clear that even if they had properly raised it, and were able to prove that the discrepancy they allege exists between the amount of water used by apartment dwellers and single-family homes, defendants' attack on the constitutionality of the regulation would fail.

First, I observe that in reviewing the discretionary acts of a governmental body, my scope of review is limited to an inquiry whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. That the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; judicial discretion may not be substituted for administrative discretion. *Glen Riddle Park Inc. v. Middletown Township*, 11 Pa. Commw. 574, 314 A.2d 524 (1974).

Secondly, the case law dealing with sewer rates provides that a municipality may create a classification of users as long as the charge is uniform within the classification and is reasonably proportional to the service rendered. *Glen Riddle Park Inc.*, supra; *Greenville Borough v. Guerrini*, 208 Pa. Super. 42, 220 A.2d 366 (1966). Defendants criticize the fact that the authority has classified both apartments and single-family homes as one EDU. Their contention is not that the charge is not uniform within the classification, but that the charge is not proportional to the service rendered.

However, as plaintiffs pointed out in argument before this court, the value of the service rendered is not necessarily measured by the amount of actual effluent generated by the user, but is also measured by the availability of service for apartments and single-family dwellings based on peak requirements. See *Patton-Ferguson Joint Authority v. Hawbaker,* supra. Defendants suggest metering, but the question is not whether a more equitable method exists, but whether I can say as a matter of law that the method being used is inequitable.

Even though defendants might pay a lesser rate if the charges were based on metered consumption, the imposition of a flat rate is not inequitable since it reasonably relates to the value of the service rendered. *Patton-Ferguson Joint Authority,* supra.; *Glen Riddle Park Inc. v. Middletown Township,* supra. In *Hickory Township v. Brockway,* 201 Pa. Super. 260, 192 A.2d 231 (1963), the court said,

"The meaning of the phrase 'equitably apportioned' is a practical one, arrived at in view of the impossibility of fixing an equal charge for equal service in the widely varying properties within a municipality." 201 Pa. Super. at 270.

The record shows that the VFSA considered and rejected the water-meter method because of inherent inaccuracies and great expense. The record also shows that the VFSA classifies users not only according to similar volumes but also according to similar strengths of waste. I see no arbitrariness or unreasonableness in this legislative judgment. Accordingly, plaintiffs are entitled to summary judgment for the amount due in tapping fees and sewer rental charges.

## CONCLUSIONS OF LAW

(1) This court has jurisdiction of plaintiff's claim against defendants for nonpayment of sewer rental

charges, tapping fees, connection fee and front-footage assessment.

(2) This court is without jurisdiction to entertain defendants' challenge to the reasonableness of rates set by the VFSA.

(3) Plaintiffs have levied appropriate charges according to township ordinances and VFSA regulations.

(4) There was no accord and satisfaction as to the connection fee and front-footage assessment.

(5) Plaintiffs are entitled to summary judgment in the amount of $14,647.16.

## DECREE NISI

And now, this November 25, 1986, plaintiffs' motion for summary judgment is hereby granted.