**WASHINGTON REALTY COMPANY, INC., a Pennsylvania Corporation, Appellant**

v.

**The MUNICIPALITY OF BETHEL PARK, a Municipal Corporation.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 21, 2007.

Decided Dec. 3, 2007.

As Amended Feb. 26, 2008.

Samuel J. Pasquarelli, Pittsburgh, for appellant.

Richard B. Tucker, III, Pittsburgh, for appellee.

BEFORE: McGINLEY, Judge, and PELLEGRINI, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Washington Realty Company, Inc. appeals an order of the Court of Common Pleas of Allegheny County (trial court) denying Washington Realty's motion for post-trial relief and affirming a non-jury verdict in favor of the Borough of Bethel Park. In doing so, the trial court sustained the validity of the Borough's ordinance pertaining to sewer charges and rentals. In this case we consider whether the Borough's methodology for assessing sewer fees on multi-unit apartment complexes is reasonable and uniform. For the reasons that follow we affirm the trial court's order.

The stipulated facts in this case are as follows. Washington Realty manages Williamsburg South Apartments, a garden apartment complex located in the Borough. The complex consists of nine buildings, each containing 12 single-family apartments for a total of 108 apartment units. Each of the apartment units has a shower, kitchen and bathroom containing at least one toilet fixture. The entire complex is serviced by five separate sewer lines, each of which is separately metered.

The Borough operates and maintains its own sewer system and sewage treatment plant.[1] The fee for any property owner connected to the Borough's sewer system is fixed by the Borough's Sewer Charges and Rentals Ordinance (Ordinance) and has two components: (1) a charge based upon the quantity of water used by each premises,[2] and (2) a flat customer service charge of $30 per premises, per quarter. Section 55.2.1(1) of the Ordinance; Repro-

---

1. The Borough treats 64 percent of the sewage produced in the Borough at its treatment facility; the remaining 36 percent is treated by the Allegheny County Sanitary Authority.

2. During the relevant time period the water usage charge was $2.30 per 1,000 gallons of water used per quarter. Section 55.2.1(1)(b); R.R. 12a.

duced Record at 12a (R.R. ___).[3] The customer service charge is a minimum charge that must be paid regardless of whether or not there is any water usage in the premises during a quarter. Section 55.2.1(1)(c) of the Ordinance; R.R. 12a.

The Borough issues five quarterly billings to Washington Realty, which is one for each of the sewer lines serving the Williamsburg South Apartments. In accordance with the rate structure in the Ordinance, the Borough bills Washington Realty for the quantity of water used by the complex on each line, plus a $30 service charge for each of the 108 apartment units.

In 2002, Washington Realty filed a complaint in equity, followed by an amended civil action complaint alleging that the Borough's customer service charge was not reasonably or uniformly applied, and not proportional to the value of the sewage service rendered to the Williamsburg South Apartments. Following a bench trial the trial court entered a verdict in favor of the Borough. Washington Realty's post-trial motions were denied, and the present appeal followed.

■ On appeal,[4] Washington Realty argues that the trial court erred in upholding the Borough's "per premises" customer service charge, as applied to the Williamsburg South Apartments, because it is not reasonable, uniform or proportional to the services provided. Washington Realty asserts that the definition of "premises" in the Ordinance is overly broad because it includes disparate types of dwellings and structures. Washington Realty also contends that the sewer rates are arbitrary because the Borough adopted the rates without conducting engineering, feasibility or accounting studies.

■ A municipality's authority to fix rates and collect charges for the use of its sewer system is governed by Chapter 12, Article II of the General Municipal Law, also referred to as the Sewer Rental Act, Act of July 18, 1935, P.L. 1286, *as amended*, 53 P.S. §§ 2231–2234. Specifically, Section 2 of the Sewer Rental Act, 53 P.S. § 2232, authorizes a municipality to establish a sewer rental rate sufficient to cover its expenses and amortize indebtedness.[5] The salient provision of Section 2 states:

> The said annual rental or whatever rate or charge shall be decided upon by the [municipality] shall be apportioned equitably among the properties served by the said sewer, sewerage system, or sewage treatment works.

53 P.S. § 2232. In interpreting Section 2, this Court has observed that a municipality may create classifications of customers of its sewer system "so long as the charge is uniform within the classification and is reasonably proportional to the service rendered." *Glen Riddle Park, Inc. v. Middletown Township*, 11 Pa.Cmwlth. 574, 314 A.2d 524, 527 (1974). The burden is on the objecting customer to show that the municipality has manifestly abused its discretion by establishing a rate system that is

---

3. The customer service charge is presently $10 per month instead of $30 per quarter.

4. This Court's review is limited to determining whether a municipality has committed a manifest abuse of discretion in establishing its sewer rental rates and classifications. *Glen Riddle Park, Inc. v. Middletown Township*, 11 Pa.Cmwlth. 574, 314 A.2d 524, 527 (1974).

5. Section 2 of the Sewer Rental Act provides, in relevant part:

> Any such annual rental, rate or charge may be, but shall not be limited to, such sum as may be sufficient to meet any or all of the

following classes of expense: (a) the amount expended annually by the ... borough ... in the operation, maintenance, repair, alteration, inspection, depreciation, or other expenses in relation to such sewer, sewerage system, or sewage treatment works; (b) such annual amount as may be necessary to provide for the amortization of any indebtedness incurred, or non-debt revenue bonds issued, by the ... borough ... in the construction or acquisition of such sewer, sewerage system, or sewage treatment works, and interest thereon, in order that said improvements may become self-liquidating, or as may be sufficient to pay

not reasonably proportional to the services rendered. *Id.*

Washington Realty's chief complaint concerns the definition of "premises" in the Ordinance. Essentially, the Ordinance defines a "premises" by how it is occupied.[6] A single building occupied by a single business is a single "premises." Likewise, an apartment unit occupied by a single individual or family is a "premises." Accordingly, one side of a double house is a "premises," and a hospital is a "premises." Washington Realty believes that it is unreasonable for the Borough to levy the same $30 customer service charge on each of its 108 apartment units that is charged on a hotel, hospital, school or supermarket. Washington Realty contends that the sewer usage of those other types of premises is similar to or greater than the collective usage of the apartments, yet the larger users pay the same single $30 quarterly

charge. Washington Realty asserts that the rate structure is not reasonable, not uniform and not rationally related to the cost of the service provided. We disagree.

At the outset, there is no question that the sewer charge is uniform within the classification of "premises" in the Ordinance. All premises pay the same $30 customer service charge per quarter. *See Glen Riddle Park,* 314 A.2d at 527 ("Since all apartments pay the same rate, it is obviously uniform."). We therefore reject Washington Realty's claim that the sewer fee is not uniform.

The gravamen of Washington Realty's complaint is that the sewer fee is disproportional to consumption and, therefore, is unreasonable. This argument ignores the fact that the fee has two components: (1) the disputed per premises customer service charge *plus* (2) a water usage charge that is uniformly set for all customers at

---

the amount agreed to be paid annually under the terms of any contract or lease with any authority or private corporation furnishing, or undertaking to design or construct facilities with which to furnish, sewer, sewerage or sewage treatment services to such ... borough ... and its inhabitants; and (c) sufficient to establish a margin of safety of ten per centum.

53 Pa.C.S. § 2232.

**6.** The complete definition of "premises" is as follows:

The property or area, including the improvements thereon, to which sewer service is or will be furnished, and as used herein, shall be taken to designate

1. A building under one roof, owned or leased by one customer, and occupied as one residence or one place of business; or

2. A group or combination of buildings owned by one customer, in one common enclosure, occupied by one family, or one organization, corporation or firm, as a residence or place of business, or for manufacturing or industrial purposes, or as a hotel, hospital, church, parochial school or similar institution, except as otherwise noted herein; or

3. The one side of a double house having a solid vertical partition wall; or

4. Each side or each part of a house or building occupied by one family even

though the closet and/or other fixtures be used in common; or

5. *Each apartment,* office or suite of offices, and/or place of business located in a building or a group of buildings, *even though such buildings in a group are interconnected by a tunnel or passageway,* covered areaway or patio, or by some similar means or structure; or

6. A public building devoted entirely to public use, such as a town hall, school house, fire engine house; or

7. A single lot or park or playground; or

8. Each house in a row of houses; or

9. *Each dwelling unit in a house or building,* a "dwelling unit" being defined as a building or portion thereof with exclusive culinary facilities designed for occupancy and used by one person or one family (household); or

10. Each individual and separate place of business and/or occupancy located in one building or group of buildings commonly designated as shopping centers, supermarket areas, and by such other terms; or

11. Each dwelling unit in a public housing development ...

Each premises shall be served through a separate premises or building service line, except where physical conditions prevent the installation of separate service facilities as determined by the municipality.

Section 55.3.3 of the Ordinance; R.R. 13a–14a (emphasis added).

$2.30 per 1,000 gallons of water used. Hotels, hospitals and schools will incur significantly higher charges for their usage than each of Washington Realty's apartment units. Thus, the *total* sewer fee is structured to measure consumption.

 Moreover, it is well settled that sewer rental charges must bear a "reasonable relation to the [v]alue of the service rendered *either* as actually consumed *or as readily available for use. Patton–Ferguson Joint Authority v. Hawbaker,* 14 Pa. Cmwlth. 402, 322 A.2d 783, 786 (1974) (emphasis added). Thus, the mere fact that a parcel of property is connected to a sewage system provides value to the premises. Further, that connection must be maintained whether or not it is used. Washington Realty presented no evidence to support its contention that the Borough's $30 per premises customer service charge is not reasonably related to the value of the service readily available for use by each premises in the Borough.[7] Washington Realty's contention is also belied by the parties' stipulated facts:

17. Each year, [the Borough] prepares and adopts a sewer budget for the operation and maintenance of the Sanitary Sewer System. The rates are set by the [Borough] to insure that there are adequate funds to support the necessary cost and maintenance of the Sanitary Sewer System....

18. All of the line items in the "Budget" for all years at issue are necessary to operate and/or maintain the Sanitary Sewer System of [the Borough].

19. All of the costs set forth in the "Budget" incurred by [the Bor-

ough] due to the operation and maintenance of the Sanitary Sewer System are reasonable and appropriate.

R.R. 39a–40a. We agree with the trial court that Washington Realty failed its heavy burden of proving that the Borough's customer service charge is not reasonably related to the value of the available sewer service.

In sum, the Borough's Sewer Charges and Rentals Ordinance establishes a fee structure that is uniform and reasonable. Every premises in the Borough is subject to the same customer service charge for the value of the sewer services that are readily available. Every premises is also charged an additional amount depending upon the services actually consumed on the premises. Accordingly, we affirm the order of the trial court denying Washington Realty's motion for post-trial relief and affirming its verdict in favor of the Borough.

### ORDER

AND NOW, this 3rd day of December, 2007, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter, dated January 12, 2007, is hereby AFFIRMED.

---

**7.** Washington Realty argues that the Borough adopted its sewer rates without conducting engineering, feasibility or accounting studies. There is, however, no requirement in the Sewer Rental Act that the Borough perform such a study before fixing its rates. The burden is on Washington Realty, as the objecting customer, to demonstrate that the Borough manifestly abused its discretion. *Glen Riddle Park,* 314 A.2d at 527.